No. 25283.

THE MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, A COLORADO CORPORATION *v.* THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO AND HENRY E. ZARLENGO, HOWARD S. BJELLAND, EDWIN R. LUNDBORG, COMMISSIONERS; COLORADO MUNICIPAL LEAGUE; THE SECRETARY OF DEFENSE ON BEHALF OF THE DEPARTMENT OF DEFENSE AND ALL OTHER EXECUTIVE AGENCIES OF THE UNITED STATES.

(491 P.2d 582)

Decided December 13, 1971.    Rehearing denied January 3, 1972.

458

T. M. Ledingham, Akolt, Shepherd, Dick and Rovira, Stuart S. Gunckel, for plaintiff-appellant.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, John E. Archibold, Assistant, Robert E. Commins, Assistant, for defendants-appellees, The Public Utilities Commission of the State of Colorado and Henry E. Zarlengo, Howard S. Bjelland, Edwin R. Lundborg, Commissioners.

James L. Treece, John W. Madden, III, Curtis L. Wagner, Jr., Dellon E. Coker, for defendants-appellees, The Secretary of Defense on Behalf of the Department of Defense and all other Executive Agencies of the United States.

Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, Richard B. Harvey, Howard J. Beck, Kenneth G. Bueche, for defendant-appellee, Colorado Municipal League.

*En Banc.*

Mr. Justice Hodges delivered the opinion of the Court.

The Mountain States Telephone and Telegraph Company (Mountain Bell) sought the issuance in the trial court of a preliminary injunction to enjoin the appellees from interfering with the charging of rates in excess of those recently authorized by the Public Utilities Commission (PUC). The higher rates described by Mountain Bell as being non-confiscatory would be charged during

the period of trial and appellate proceedings involving the validity of the rate of return and the resulting rates recently authorized by the PUC and placed into effect by Mountain Bell. This rate of return and resulting rates are alleged by Mountain Bell to be confiscatory and therefore unconstitutional.

Mountain Bell's motion in the trial court for a preliminary injunction asserted that Mountain Bell was without an adequate remedy at law and would suffer irreparable, great and certain injury if the preliminary injunction was not granted, because in the event it was ultimately determined that the current rates based upon the rate of return ordered by the PUC were confiscatory, Mountain Bell would have irretrievably lost the additional revenue it would have been entitled to during the period of judicial proceedings. This is so because in Colorado there is no provision in law for the recoupment of those revenues.

It is also asserted by Mountain Bell that if, on the other hand, it did not prevail in securing a judicial determination of confiscation as to current rates, the injury to subscribers by comparison would be minimal because if Mountain Bell were permitted to collect higher rates, provision would be made for a surety bond to secure the refund to subscribers of the excess in rates collected during this period.

The trial court ruled that Mountain Bell was not entitled to such a preliminary injunction. From the trial court's judgment denying preliminary injunctive relief, Mountain Bell now appeals.

■ The underlying and critical issue presented on this appeal involves the propriety, under the circumstances of this case, of a preliminary injunction which would not maintain the status quo of current rates, but would rather permit the charging of higher rates during the judicial review of the PUC authorized rates.

We agree with the trial court that Mountain Bell is

not entitled to such a preliminary injunction, and we therefore affirm its judgment.

In the resolution of the issue on this appeal, it is unnecessary to describe in detail the procedures at the PUC level. It is sufficient to state that Mountain Bell initiated the procedures by proposing and seeking to promptly begin charging its subscribers higher rates. Mountain Bell requested $29,957,000 in additional revenue for 1971 which would result in a return on common equity of 13 percent. After a full hearing, the PUC in March 1971 by its decision granted Mountain Bell $11,189,015 in additional revenue which would result in a 11.4 percent rate of return. The rates to produce this additional authorized revenue were thereupon put into effect by Mountain Bell.

Thereafter, Mountain Bell commenced this case in the trial court and by its verified complaint challenged the validity of the rates granted by the PUC. Mountain Bell alleged that the rates authorized by the PUC were unjust, unreasonable, confiscatory, and therefore, unconstitutional. In support of this allegation, it is alleged that several erroneous findings and conclusions were arrived at and utilized by the PUC as its basis for rate making in this case. Mountain Bell first alleged in this regard that the only competent evidence in the record of the PUC hearing shows that a rate of return on common equity of less than 13 percent is not just or reasonable. Also, that in setting 11.4 percent as the rate of return, the PUC fallaciously assumed that in determining rates the relationship between revenues, expenses, and investments based on an historic test period will have authenticity in the future, particularly in a period of anticipated rapid expansion of plant, equipment and facilities. In such a period of anticipated growing demand for communication service, financial commitments must be made now for future plant, equipment and facilities. This, claims Mountain Bell, requires an expert look into the future as a basis for today's rates rather than an ad-

herence to a historic test period. This adherence allegedly denied Mountain Bell the opportunity to earn even the 11.4 percent return as authorized by the PUC, and "will result in Mountain Bell earning less than 9 percent on common equity during 1971."

Another reason ascribed by Mountain Bell in its trial court complaint for declaring the PUC decision invalid, is that the Commission erroneously denied Mountain Bell's request to use accelerated depreciation of $33,948,000 as an expense during this period in order to mitigate the effects of inflation, or to make any other provisions in this respect, such as, either increasing Mountain Bell's "rate base or using a higher rate of return on equity."

In its briefs, Mountain Bell argues strenuously and extensively that the equitable relief of the requested preliminary injunction is a dire necessity if Mountain Bell is to continue in good financial health, and thus, be able to cope not only with inflation but with the rapid expansion of its services and facilities. Also, it is only by the means of such a temporary injunction, says Mountain Bell, that it can now be protected against the current confiscation of the rates authorized by the PUC. In this regard at the trial court hearing, Mountain Bell intended to present evidence to demonstrate that the additional revenue authorized by the PUC had, in fact, while in effect produced less than the 11.4 percent rate of return authorized by the PUC; and that projections for the period just ahead showed a further lowering of the rate of return. The presentation of evidence by Mountain Bell was denied by the trial court, which, however, permitted it to make an offer of proof. Mountain Bell thereupon stated that its proof, in addition to revealing the above factors, would show that currently and in the period just ahead, Mountain Bell would need $2,500,000 in additional monthly revenue to realize a 13 percent rate of return on equity. Mountain Bell also proposed to show that it has a problem in using either

equity or debt financing because of the present inadequate return on equity.

The statute, 1969 Perm. Supp., C.R.S. 1963, 115-6-15, which provides for district court review of PUC rulings, specifies that a challenge of a PUC decision shall be heard on the record of the PUC and that no new or additional evidence may be introduced in the district court. In our view, this applies equally to any hearing on a preliminary injunction which might be issued in such review proceedings. Certainly, during the hearings before the PUC, this, or similar evidence, was presented by Mountain Bell. If this evidence was not presented to the PUC and it reflects new developments since the time of the PUC decision, then such evidence should be the basis for a renewed rate case before the PUC. The trial de novo aspect of presenting evidence was properly rejected by the trial court. *PUC v. Northwest,* 168 Colo. 154, 451 P.2d 266. *Northwest* also presents an excellent discussion of the statutory provision regarding district court review of PUC decisions.

It must therefore be borne in mind that the allegations contained in Mountain Bell's complaint in the trial court and in its motion for preliminary injunction have not been considered by the trial court on their merits. The trial court was asked for a preliminary injunction to impose higher rates which Mountain Bell believed to be just, reasonable, and non-confiscatory in the face of a PUC decision which rejected Mountain Bell's belief and representations in this regard. A change in the status quo of utility rates on this premise is without warrant in law or equity. In our view, it is elemental that a trial court should have before it a substantial basis for granting any injunction which would place upon the public the burden of higher public utility rates, when such higher rates have been rejected after an administrative hearing before the agency which has been vested with the authority, and presumably, has the expertise to fix such rates. Even upon a substantial

showing of probable success in ultimately establishing that the rate authorized is unjust, unreasonable, and even confiscatory, the sanction of any equitable relief, should properly be directed to the administrative agency to permit and set such higher rates as will be deemed to be more consistent with fairness and reasonableness than the current rates under challenge. Thus, the court may not necessarily order an increase to the full extent requested by the public utility. In the legislative scheme of public utility regulation in Colorado (*See* C.R.S. 1963, 115-3-1 *et seq.* and amendments in 1969 Perm. Supp., C.R.S. 1963, 115-3-5 *et seq.*), the PUC is charged with the legislative responsibility of rate making.

■ To issue the preliminary injunction requested here would dilute the rate making prerogative of the PUC, and the statutes relating to public utility rate making and regulation would be effectively bypassed. The fixing of rates is a legislative function and not a judicial function. Therefore, any semblance of judicial rate making should be avoided. *PUC v. Northwest, supra.*

All parties on this appeal have presented able briefs on the preliminary injunction issue which we herein resolve on the basis of rationale we deem to be rather obvious and quite elementary. We have considered and analyzed the many cases cited for all variations of fact circumstances considered in the light of the local and Federal statutes pertaining to public utility regulation and rate making. We perceive no useful purpose in any lengthy discussion or citation of these many cases to which our attention has been directed. We do, however, make note of one recent New York case which on the facts is quite similar to the facts of the instant case; also, in general, we believe that the rationale we have expressed in this opinion in resolving the preliminary injunction issue is partially expressed in this case which is *New York Telephone Co. v. Public Service Com'n,* 36 App. Div. 2d 261, 320 N.Y.S.2d 280 (1971). In that case, the Appellate Division of the Supreme Court of

New York held that a preliminary injunction which restrained interference with the collection of tariffs filed by the company but rejected by the Public Service Commission of New York, should not have been issued by the lower court. The following paragraph from this New York case is quoted to demonstrate some of the reasoning which formulated the basis for the refusal to afford judicial sanction to a preliminary injunction:

"The case comes to us in a curious posture. Two years after filing the proposed tariff, after 10,000 pages of technical testimony have been taken and evaluated, after motions for rehearing and reargument have been disposed of, and after all 5 Commissioners have agreed that the proposed tariff of March, 1969 is unreasonable and excessive, the company, by virtue of Special Term's order has imposed rates granting that very increase. The *preliminary injunction of Special Term has not maintained the status quo*. It has mandated by a decision on papers only, the complete relief requested by the company and unanimously denied by the commission. Now, *the Company claims the right to repeat the entire rate review process by trial de novo in an effort to justify that the $175,000,000 increase was not unreasonable and excessive.* And it would prove this not to those trained and experienced in rate cases who were convinced otherwise, but to a single judge at *nisi prius* in a proceeding in which all the evidentiary rules and formalistic procedural devices of the courts apply instead of the advantages of statutory administrative hearings." (Emphasis added.)

The procedural issue presented on this appeal and the ancillary arguments pertaining to the general equity jurisdiction of the courts do not, in our view, merit any attention in view of the basis of our affirmance of the trial court's refusal to issue the preliminary injunction.

Judgment affirmed.

Mr. Chief Justice Pringle not participating.