No. 27864
No. 27836

Peoples Natural Gas Division of Northern Natural Gas Company v. Public Utilities Commission of the State of Colorado; Edwin R. Lundborg, Henry E. Zarlengo and Edythe S. Miller, Commissioners, and The City of Durango, Colorado; and The Board of County Commissioners of the County of La Plata

No. 28080

The City of Lamar and The Utilities Board of the City of Lamar v. The Public Utilities Commission of the State of Colorado; Commissioners Edwin R. Lundborg, Edythe S. Miller and Henry E. Zarlengo, and Sanders G. Arnold as successor in office to Henry E. Zarlengo; and Peoples Natural Gas Division of Northern Natural Gas Company

(590 P.2d 960)

Decided February 20, 1979.

T. N. Wright, A. R. Madigan; Gresham, Stifler, Gentry & Covell, Thomas C. Stifler, for plaintiff-appellee.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Eugene C. Cavaliere, Assistant, for defendants-appellants.

Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, William Hamilton McEwan, Gary S. Cohen, for intervenors-appellees, in No. 27864 and No. 27836.

Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, William Hamilton McEwan, Gary S. Cohen, for plaintiffs-appellants.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Eugene C. Cavaliere, Assistant; T. N. Wright, A. R. Madigan; Gresham, Stifler, Gentry & Covell, Thomas C. Stifler, for defendants-appellees, in No. 28080.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

Two district courts in separate proceedings (but with the same judge) ruled that the Public Utilities Commission of Colorado (hereinafter, the Commission) should grant surcharges requested by the Peoples Natural Gas Division of Northern Natural Gas Company (hereinafter, Peoples). The surcharges were designed to allow Peoples to recover expenses incurred while the Commission investigated a requested rate increase. The cases were consolidated on appeal. We affirm.

The Federal Power Commission issued Opinion No. 770 on July 27, 1976, thereby establishing new maximum base prices for the sale of natural gas in interstate commerce. As a result, Peoples' suppliers significantly increased the price of natural gas. Peoples filed its request for a pass-on rate increase with the Commission, together with its request for a surcharge to cover losses it would suffer between the time of filing and the time of the Commission's decision.[1] A "pass-on" rate increase is so named because Peoples sought only to shift to its customers the burden of the increases in the cost of gas from suppliers. Such a procedure differs from a general rate filing through which Peoples might seek to increase its

---

[1] According to section 40-6-111(2), C.R.S. 1973 a requested rate increase may not go into effect until 30 days after it is filed. However, as occurred here, the Commission may extend the 30-day suspension period up to 210 days. The surcharge was intended to cover this suspension period.

profits or its allowed rate of return.

Peoples serves five rate areas in Colorado, each of which has a different source of supply. Since Peoples' expenses vary from area to area, it must petition separately for rate increases in each area. This is why there were separate proceedings from which the cities of Durango and Lamar appealed.

In the Durango proceeding, the Commission granted the pass-on rate increase but denied the surcharge (Decision No. 89940). When Peoples appealed, the district court reversed the denial of the surcharge. In the Lamar proceeding, the Commission granted the pass-on increase *and* the requested surcharge. (Decision No. 90030). Here, the district court affirmed. The City of Durango and the Board of County Commissioners of La Plata (hereinafter Durango) and the City of Lamar and the Utilities Board of Lamar (hereinafter Lamar) appealed. The Commission also appealed the decision in the Durango case, but has not actively pressed its appeal.

## I.

The two cities contend that granting the surcharge (1) constitutes constitutionally retroactive ratemaking under *Colo. Const.* Art. II, § 11, and (2) constitutes ratemaking in excess of the Commission's jurisdiction under section 40-3-111, C.R.S. 1973.

Appellants maintain that the fixing of rates is a legislative function and, therefore, is subject to the prohibition against retrospective enactments.[2] *Mountain States Telephone and Telegraph Company v. The Public Utilities Commission of the State of Colorado,* 176 Colo. 457, 491 P.2d 582 (1971). While we agree that ratemaking is a legislative function, the cities have not established that the surcharge was retrospective in operation within the meaning of the constitutional provision. This provision has been interpreted to prohibit legislation which "takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." *Moore v. Live Stock Company,* 90 Colo. 548, 10 P.2d 950 (1932); *Denver South Park Pacific Railway Company v. Woodward,* 4 Colo. 162 (1878).

The constitutional prohibition of retrospective legislation parallels the provision forbidding *ex post facto* laws. *French v. Deane,* 19 Colo. 504, 36 P. 609 (1894). The purpose of the provisions are similar, *viz.,* to prevent the unfairness entailed in altering the legal consequences of events or transactions after the fact.

---

[2] "No . . . law . . . retrospective in its operation . . . shall be passed by the general assembly." *Colo. Const.* Art. II, § 11.

■ If Peoples were seeking an increased rate in order to recoup operating expenses incurred prior to any filing for new tariffs, its activities arguably might fall within the constitutional prohibition. However, that is not the case here. As the district court noted, the surcharge requested here is not connected with the past performance of the utility. It relates only to a period of suspension during which the Commission was considering whether to grant the pass-on rate increase. The fact that there was some lag between the request for a rate increase and the Commission's decision does not render the Commission's action retrospective within the meaning of *Colo. Const.* Art. II, § 11.

Appellants also contend that, even if the surcharge is not precluded by *Colo. Const.* Art. II, § 11, the Commission exceeded powers conferred in section 40-3-111, C.R.S. 1973 by granting it. The relevant portion of the statute reads:

". . . the commission shall determine the just, reasonable, or sufficient rates . . . *to be thereafter observed* . . . ." (Emphasis added.)

Appellants argue that the language quoted and emphasized above precludes granting a surcharge to cover a period prior to the Commission's decision.

■ Since this is a proceeding in which a tariff for a new rate was filed, not a proceeding in which the Commission found the *existing* rates were "unjust, unreasonable, discriminatory, or preferential," section 40-6-111, C.R.S. 1973 governs. It contains no language comparable to that cited from section 40-3-111, C.R.S. 1973, which would preclude granting the surcharge.

## II.

Appellants also argue that the district courts erroneously concluded that the denial of the surcharge would result in an unconstitutional confiscation of Peoples' property. We consider each decision below separately regarding this issue since the Commission's ruling was reversed in the Durango proceeding, but affirmed in the Lamar proceeding. The standard for a district court's review of the Commission's findings is set forth in section 40-6-115(3):

"The review shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the decision under review violates any right of the petitioner . . . and whether the decision of the commission is just and reasonable and whether its conclusions are in accordance with the evidence."

In reference to the Lamar decision, appellants contend that the *sole* reason for the Commission's decision was its erroneous conclusion that Peoples' property would be confiscated if the surcharge were not granted. A review of even that portion of the Commission's findings which were quoted by the district court shows appellants construe the basis of the Commission's decision too narrowly:

"The Commission looks with disfavor on any use of a surcharge as a mechanism to recover losses resulting from natural gas price increase. However . . . to disallow Peoples a surcharge . . . would result in Peoples achieving a negative rate of return on equity under the test year conditions of this proceeding. Quite simply, that means that Peoples would not collect sufficient revenues to meet its fixed indenture obligations for the test year presented. Thus, the Commission reluctantly concludes that the surcharge requested by Peoples should be allowed in this case, because to do otherwise may result in confiscation of the utility's property. Further, the allowance of a purchased gas cost adjustment to Peoples on December 12, 1976, will alleviate the necessity of the Commission's granting such extraordinary relief in the future."

The Commission did conclude that a denial of the surcharge would result in the confiscation of Peoples' property. However, it based its conclusion upon findings concerning the economic impact upon Peoples as well as fundamental fairness.

The district court determined that the Commission allowed the surcharge so Peoples could preserve its credit rating and financial solvency, as well as because the Commission believed that denying the surcharge would amount to confiscation. The court concluded that it was in accord with the evidence and only fair "to solve the problem without forcing Peoples to suffer financial failure."

■ In view of these findings by the Commission and the district court, we cannot credit appellant's claim that the sole basis of the Commission's decision was its conclusion that denial of the surcharge would constitute an unconstitutional confiscation of Peoples' property. We hold that the district court's affirmance was proper since the Commission's decision was based upon competent evidence.

■ Regarding the Durango decision, appellants contend that the district court wrongly reversed the Commission on the grounds that denial of the surcharge would result in unconstitutional confiscation of Peoples' property. As noted above, the relevant standard of review permits the district court to reverse the Commission if its decision violates constitutional rights or is unjust or unreasonable in the light of the evidence. Here, the district court concluded that denial of the surcharge would be unfair and unjust, as well as an unconstitutional confiscation of Peoples' property.

The court stated that the amount to be recovered was significant, *viz.,* $344,301; that the Commission was inconsistent in deciding the rate increase was just and fair, but that the surcharge was not; and that it was only just to allow a regulated supplier to recover an increase in the cost of fuel especially when the increase was occasioned by the activity of another regulatory body. We affirm as to the conclusion that the denial of the surcharge would have been unfair. In view of this affirmance, we need not reach the confiscation issue, for that simply provides an alternative ground

158

for reversal of the Commission.

We affirm the decisions of the district court in both the Lamar and Durango cases.