**v.**

**The PEOPLE of the State of Colorado, County of Fremont, Respondent– Appellee.**

**No. 90CA0743.**

Colorado Court of Appeals, Div. II.

Aug. 15, 1991.

Rehearing Denied Sept. 19, 1991.

Certiorari Granted Jan. 27, 1992.

Paul Joseph Skok, Denver, for petitioner-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Cheryl A. Linden, Asst. Atty. Gen., Denver, for respondent-appellee.

Richard J. Banta, Denver, for amicus curiae Colorado Criminal Defense Bar.

Opinion by Judge SMITH.

D.K.B. appeals the district court's summary order denying his petition for an order to seal the arrest and criminal records relating to his conviction for voluntary manslaughter. We reverse and remand with directions.

In 1969, D.K.B. pled guilty to voluntary manslaughter. He was fully discharged from the Department of Corrections in 1973. And, in 1990, alleging no further arrest or criminal record and that he was a productive member of society, the defendant filed the above petition, requesting a hearing on the issue of whether his privacy interest in having the records sealed outweighed the public interest in their retention.

D.K.B. filed his petition in reliance on § 24–72–308(3) C.R.S. (1982 Repl. Vol. 10) (the 1977 law). Prior to its repeal and reenactment in 1988, this statute provided in relevant part:

"(a) *Any person in interest* may petition the district court of the district in which the arrest and criminal records information pertaining to him is located for the sealing of all or any part of said record, except basic identification information.

(b) Upon the filing of a petition or the entering of a court order relating to the sealing of records, the court shall set a date for a hearing....

(c) (I) Upon a finding that the harm to privacy of the person in interest or dangers of unwarranted adverse consequences outweigh the public interest in retaining the records, the court may order such records, or any part thereof except basic identification information, to be sealed." (emphasis added)

The trial court denied D.K.B.'s petition on grounds that he had been convicted of voluntary manslaughter and that § 24–72–308, as repealed and reenacted in 1988, (the 1988 law) expressly *limited* the right to petition for a hearing on the issue of sealing arrest and criminal records to situations in which the petitioner had not been charged, or in which the case had been completely dismissed, or the defendant had been acquitted. *See* § 24–72–308(1)(a), C.R.S. (1990 Cum.Supp.). Accordingly, the district court concluded that, having been convicted, D.K.B. was precluded from seeking the relief he requested.

The sole issue on appeal is which law governs D.K.B.'s petition. He argues that, because his conviction was in 1969, his right to petition for a hearing was granted, and is governed, by the 1977 law. Furthermore, he argues that the district court's application of the 1988 law to his petition violates the constitutional prohibition against retrospective legislation.

We note this court's recent decision in *In re R.B. & Concerning the People*, 815 P.2d 999 (Colo.App.1991) wherein the result which D.K.B. seeks was reached on an "ex post facto" rationale. However, because the right here involved and the relevant statute are essentially civil in nature, as opposed to criminal, we find it necessary to deal with the 1988 statute under a "retrospective statute" analysis.

■ Colo. Const. art. II, § 11, does, indeed, prohibit the passage of any law "retrospective" in its application. Nonetheless, as numerous cases have illustrated, this constitutional prohibition is not triggered merely because the facts upon which the law operates occurred before the law was adopted. *See Continental Title Co. v. Dis-*

*trict Court,* 645 P.2d 1310 (Colo.1982); *Tucker v. Claimants in re Death of Gonzales,* 37 Colo.App. 252, 546 P.2d 1271 (1975).

Rather, the issue upon which unlawful retrospectivity turns is whether the law attempts to create, eliminate, or modify a substantive right or liability, or whether it relates only to remedies or methods of procedure to enforce such rights or liabilities. *Smith v. Putnam,* 250 F.Supp. 1017 (D.Colo.1965). *See also Kardoley v. Colorado State Personnel Board,* 742 P.2d 934 (Colo.App.1987). In the first instance such laws have been held to violate the constitutional prohibition. *Lohf v. Casey,* 330 F.Supp. 356 (D.Colo.1971). In the latter they have not. *Continental Title Co. v. District Court, supra; Smith v. Putnam, supra.*

■ Consequently, the Colorado Constitution does not bar application of the 1988 law to D.K.B.'s petition to seal the records of his 1967 conviction unless such application results in elimination or modification of a substantive right previously acquired by D.K.B.

Our analysis of the nature of the statutory right to petition to have one's criminal record sealed, as defined in the 1977 law, persuades us that application of the 1988 law to one in D.K.B.'s position, indeed, would result in the elimination of a prior vested substantive right. Thus, such application is proscribed by the Colorado Constitution.

The statutory right defined in the 1977 law evolved directly from the rule announced in *Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157 (1972). There, the supreme court, recognizing the economic and personal harm to an individual which results if his arrest becomes publicly known, held that arrest records compiled by government officials fall within the ambit of a citizen's right of privacy. And, consequently, justice requires that "the existence of a right of privacy in the fingerprints and photographs of an accused who has been acquitted, to be at least placed in the balance, against the claim of the state for a need for their retention."

The 1977 law essentially codified and defined the procedures for applying the *Davidson* rule, albeit encompassing *all* persons, not just those acquitted, in its scope. *See People v. Whittle,* 628 P.2d 169 (Colo.App.1981). And, significantly, the law incorporated the private/public interest balancing analysis applied by the *Davidson* court, an analysis retained in the 1988 law despite the latter law's express exclusion of persons in D.K.B.'s position.

As evidenced by the foregoing, the right to petition to have one's arrest and criminal record sealed, implemented in the statute, is a right which "rests upon equities ... has reasonable limits and restrictions and ... has some regard to the general welfare and public policy." *See* N. Singer, *Sutherland Statutory Construction* § 41.06 (4th ed.1986). It is, we conclude, a significant and fundamental *substantive* right which, once having vested, or become applicable to an individual, must, in the interest of fairness and justice, be protected against extinguishment by subsequent amendatory or repealing legislation.

Indeed, our conclusion was foreshadowed in *People v. Wright,* 43 Colo.App. 30, 598 P.2d 157 (1979) in which this court, in interpreting the statute at issue here, held that "by obtaining the sealing of their records, individuals have an effective remedy to secure their right of privacy."

In sum, the 1977 law ratified and conferred on *all* persons, *including those convicted of a crime,* the substantive right, on proper showing, to have one's arrest and criminal record sealed. *See* Goldsmith & Haddon, *Procedures & Ethical Questions Under the Colorado Criminal Justice Records Act,* 14 Colo.Law. 2193 (December 1985).

The 1988 law expressly ratified the same substantive right, but expressly limited it to those individuals whose arrest does not culminate in a conviction of, or plea of guilty to, a criminal offense.

Specifically, the 1988 law, § 24–72–308, C.R.S. (1990 Cum.Supp.), provides in relevant part:

"(1)(a) Any person in interest may petition the district court of the district in which any arrest and criminal records information pertaining to said person in interest is located for the sealing of all of said records, except basic identification information, *if the records are a record of official actions involving a criminal offense for which said person in interest was not charged, in any case which was completely dismissed, or in any case in which said person in interest was acquitted.*

. . . .

(II) Upon the filing of a petition, the court shall set a date for hearing ... (c) After the hearing ... is conducted and if the court finds that the harm to the privacy of the petitioner or dangers of unwarranted adverse consequences to the petitioner outweigh the public interest in retaining the records, the court may order such records, except basic identification information, to be sealed." (emphasis added)

It is undisputed that the General Assembly may, as it has here in the 1988 law, *prospectively* deny to a particular class of individuals a right which it has previously granted or confirmed to others by statute. However, we conclude that if the previously granted right has vested and if it derives from fundamental principles and is *substantive* in nature, then the General Assembly cannot do so retrospectively in light of the constitutional prohibition.

The People argue, however, that there is no issue of retrospectivity here because D.K.B. did not file his petition requesting a hearing until 1990, well after the 1988 law took effect.

▪ The essence of the People's argument, as we perceive it, is that any substantive right D.K.B. may have possessed to petition to have his record sealed did not "vest" until he filed his petition requesting such relief. We disagree.

The issue to which the statute has been directed, throughout its various amendments and repeal and reenactments, is the competing interests in the public availability of arrest and criminal records. It is not, however, the filing of a petition which gives rise to "public availability." Rather, it is the very existence of such records as public records that creates the issue.

Although the issue exists from the very commencement of the investigation, no right to seek a sealing of the records has been recognized by the statute, or by case law, until the matter to which the records relate has been finally concluded, as in the case of abandonment, dismissal of charges, or conviction. We conclude from this fact that, as a matter of public policy, the public's interest in the availability of records outweighs the individual's right to privacy until such time as the government's investigation and/or prosecution has been completed. As a result, prior to that time, there are, simply, no "competing interests" to be balanced.

We further conclude, therefore, that the right to petition for a hearing "vests" when the criminal matter for which the arrest and criminal record have been compiled is concluded. Accordingly, D.K.B.'s right to petition "vested" upon his conviction in 1969.

Applying our conclusions to the circumstances here, we hold that D.K.B. possessed a substantial and vested right under the 1977 law to petition for a hearing to determine whether, balancing his interest against those of the government, his privacy interest in having the arrest and criminal records relating to the 1969 manslaughter conviction sealed outweighed the public interest in their retention. As the express language of the 1988 law appears to preclude the enforcement of this right to D.K.B. if applied here, it is violative of the Colorado Constitution, and thus, it cannot be retrospectively applied to bar a hearing on, and determination of, his petition. *See In re R.B.*, 815 P.2d 999 (Colo.App.1991).

We do not hold here that any individual who has been convicted prior to the effective date of the 1988 law possesses an absolute right to have his records sealed. However, it may well be that, in some instances in which a conviction has been

obtained, the individual's right to privacy will outweigh the public interest in the retention of the arrest and criminal records. Thus, it is the opportunity for a hearing and the right to have the "balancing" test applied which is at issue here, and not the issue of whether D.K.B.'s records should be sealed.

Accordingly, we hold that the 1977 law governs D.K.B.'s right to petition for a hearing and that the trial court erred in summarily denying his petition on grounds that the 1988 law conclusively precluded the granting of such relief.

The order is reversed, and the cause is remanded with directions to reinstate D.K.B.'s petition and to conduct a hearing in accordance with § 24–72–308(3), C.R.S. (1982 Repl. Vol. 10).

METZGER, J., concurs.

ROTHENBERG, J., dissents.

Judge ROTHENBERG dissenting.

I respectfully dissent.

In 1969, when D.K.B. pled guilty to voluntary manslaughter, Colorado did not recognize a right to privacy in criminal records. That right originated in *Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972), where our supreme court determined that, although no statute authorized it, the court had the inherent authority to expunge an arrest record or order its return,

"when the harm to the individual's right of privacy or dangers of unwarranted adverse consequences outweigh the public interest in retaining the records in police files."

Importantly, the right of privacy announced by *Davidson* in 1972 was limited to acquitted persons:

"We have now reached the point where our experience with the requirements of a free society demands the existence of a right of privacy in the fingerprints and photographs of an accused who has been *acquitted....*

"We believe the right of an individual, absent a compelling showing of necessity by the government, to the return of his fingerprints and photographs, *upon ac-*

*quittal,* is a fundamental right...." (emphasis added)

*See also People v. Wright*, 43 Colo.App. 30, 598 P.2d 157 (1979) (defendant successfully completed period of deferred prosecution resulting in dismissal of charges); *In re R.B.*, 815 P.2d 999 (Colo.App.1991) (charges dismissed after deferred judgment).

Here, D.K.B. was not acquitted, but pled guilty to a felony.

In 1977, the General Assembly enacted legislation which, for the first time, allowed persons convicted of crimes to petition the court to seal their criminal records. In 1988, however, that statute was repealed and, as reenacted, it expressly limited the right to petition to cases in which the accused was acquitted or in which the criminal charges were completely dismissed. *See* § 24–72–308(1)(a), C.R.S. (1988 Repl. Vol. 1B).

Thus, D.K.B. has never had a constitutional right to the privacy of his records. *See Davidson v. Dill, supra.* And, from the time of his release from prison in 1973 until the statute was passed in 1977, he also had no statutory right. His statutory right to petition originated in 1977 and continued for eleven years until 1988, when the statute was repealed and reenacted.

Citing *Colo. Const.* art. II, § 11, D.K.B. now contends, however, that the 1977 statute conferred upon him a substantive right which vested and cannot be removed without violating his state constitutional rights against retrospective legislation. I respectfully disagree.

The purposes of the prohibition against retrospective legislation and against *ex post facto* laws are similar, that is, "to prevent the unfairness entailed in altering the legal consequences of events or transactions after the fact." *Peoples Natural Gas Division v. Public Utilities Commission*, 197 Colo. 152, 590 P.2d 960 (1979). *See also Aue v. Diesslin*, 798 P.2d 436 (Colo.1990).

Here, the first act creating D.K.B.'s legal consequences occurred in 1969 when he pled guilty to a felony. However, no right to privacy in criminal records was even

recognized until 1972. See Davidson v. Dill, supra. Compare with In re R.B., supra, where the right to privacy of the petitioner's criminal records existed at the time the offense was committed and at the time of the deferred judgment.

In 1973, a second act creating legal consequences occurred when D.K.B. was released from prison. Again, as to D.K.B., no right to privacy existed. See Davidson v. Dill, supra. In 1990, a third act creating legal consequences occurred when D.K.B. filed a petition to seal his criminal records. However, he still had no constitutional right to privacy and, whatever statutory right he once had, expired in 1988. See Vail v. Denver Building & Construction Trades Council, 108 Colo. 206, 115 P.2d 389 (1941) (powers derived wholly from a statute are extinguished by its repeal). Thus, here, I cannot see how the General Assembly altered the legal consequences after the fact for D.K.B.

Further, I perceive no unfairness to D.K.B. arising from the General Assembly's decision in 1977 to expand rights beyond the boundaries set forth in Davidson, supra, nor in its later decision in 1988 to limit those rights. See Vail v. Denver Building & Construction Trades Council, supra. See also State v. T.P.M., 189 N.J.Super. 360, 460 A.2d 167 (1983) (retroactive application of expungement chapter of the Code of Criminal Justice did not violate due process because a statutory expectation is not a protected liberty interest).

As this court stated in Himelgrin v. Denver, 717 P.2d 1006 (Colo.App.1986): "The existence of a vested right may not be proclaimed unless the private interest in the right outweighs the public interest in the challenged rule." In my opinion, here, D.K.B.'s private interest in maintaining the privacy of his conviction for a major felony, however remote the conviction, is outweighed by the public interest in making criminal records available for law enforcement purposes, for purposes of future employment, or for other legitimate purposes.

Thus, I would hold that D.K.B. acquired no vested rights from the 1977 statute, but only a remedy which he chose not to utilize. I would therefore affirm the trial court's order denying D.K.B.'s petition to seal his criminal records. See Jefferson County Department of Social Services v. D.A.G., 199 Colo. 315, 607 P.2d 1004 (1980). Since I believe that the ex post facto clause of the Colorado Constitution is inapplicable to this proceeding, which is civil in nature, I would also affirm the trial court's order in that respect. See Denver Railway Co. v. Woodward, 4 Colo. 162 (1878). But see In re R.B., supra.