**SILVERADO COMMUNICATION CORPORATION, Plaintiff–Appellant,**

v.

**PUBLIC UTILITIES COMMISSION OF THE STATE of COLORADO, Commissioners Robert E. Temmer, Christine E.M. Alvarez, and Vincent Majkowski; and US West Communications, Inc., Defendants–Appellees.**

**No. 94SA206.**

Supreme Court of Colorado, En Banc.

April 24, 1995.

Rehearing Denied May 15, 1995.

Nichols & Hecht, LLC, Robert W. Nichols, Charles B. Hecht, Julie C. Tolleson, Denver, for plaintiff-appellant.

Denman & Associates, P.C., Steven H. Denman, Richard L. Corbetta, Wendy M. Moser, Denver, for defendants-appellees U S West Communications, Inc.

Justice MULLARKEY delivered the Opinion of the Court.

Plaintiff-appellant Silverado Communications Corporation (Silverado), appeals from the Denver District Court holding that defendant-appellee U S West Communications, Inc. (US West) did not engage in retroactive ratemaking and was entitled to shift Silverado's service from a "semi-public" business trunk service (PBX trunks) to its Public Access Line (PAL) tariff. Silverado challenges the applicability of the PAL tariff from October 1991 to February 1993. We affirm the holding of the district court.

## I.

The Public Utilities Commission (PUC) regulates Silverado as a provider of computer-based telecommunications services, including a product designed to enable inmates in correctional institutions to communicate with persons outside of the facilities. Silverado purchases connections to the local exchange telephone network from US West under that company's effective tariffs. Silverado then provides service to its customers pursuant to its own PUC-approved tariffs. Silverado originally provided the inmate service through U.S. West's PBX trunks but was switched unilaterally by US West to its PAL lines.[1] All other inmate service providers, including US West, provide service under the applicable PAL tariffs.

Originally, Silverado's inmate service product was technically incompatible with US West's PAL system. However, because Silverado's product was technically compatible with the US West's PBX trunks, US West agreed to temporarily provide service through its PBX trunks on a flat-rate basis. A letter from US West confirming the agreement stated:

> The purpose of this letter is to inform you that US West Communications, Inc. has installed service as of November 15, 1989, at your request.... However, it is US West Communication, Inc.'s position that the definition in the semi-public service tariff, 5.3.2.6, does not actually fit the type of service your company intends to provide ... Even though it does not appear that the semi-public tariff definition applies, there does not appear to be any other tariff offering which exactly applies.

> Rather than US West Communications, Inc. taking the position that it cannot provide service, it is providing service as requested. However, US West Communications, Inc. plans to take this matter to the Commission [PUC] in the near future in the form of a new tariff offering which will apply to your situation, as well as other companies that may have the same need for service.

Although US West subsequently sought approval on one occasion from the PUC for a specially designed PAL tariff for inmate service in Advice Letter 2181, it ultimately withdrew its application.

According to testimony, once technical compatibility was attained, Silverado was not immediately converted to PAL service. US West explained that it did not switch Silverado to PAL service because of a pending general rate case which resulted in our decision in *Integrated Network Services v. P.U.C.*, 875 P.2d 1373 (Colo.1994). At issue in that case was the applicable tariff for providers of payphone and shared tenant services. *Integrated Network* held that US West appropriately applied measured PAL

---

**1.** The primary difference between PBX and PAL is the rate structure. PAL tariffs are based exclusively on usage. Users of PBX trunks, on the other hand, are billed on a flat rate or usage

sensitive basis. *Integrated Network Services v. P.U.C.*, 875 P.2d 1373, 1378 (Colo.1994), discusses the differences between PBX and PAL systems in greater detail.

service rates to resellers of telecommunications services. Payphone providers and providers of shared tenant services were held to be resellers of the communications service,[2] and, thus, were subject to the measured resale PAL service rate.[3]

In September 1991 and after the general rate case was determined by the PUC, US West notified Silverado that it was canceling the PBX trunk service and converting all of Silverado's inmate service access lines to the existing PAL service. US West began conversion of the lines in October of 1991, but, because of administrative difficulties, did not complete conversion of all of Silverado's lines to PAL service until March of 1992. This conversion significantly increased the cost of service to Silverado. Shortly thereafter, Silverado filed a formal protest with the PUC.

After Silverado filed its grievance, US West filed a new proposed amendment to its existing PAL tariffs through Advice Letter 2254. According to US West, the amendment was intended to clarify any ambiguity in the PAL tariff and to ensure adequate inmate service coverage under the PAL tariff. The amendment was consolidated with Silverado's protest and was assigned to an Administrative Law Judge (ALJ) for hearing. The ALJ accepted the proposed amendments and rejected Silverado's formal protest. In so doing, the ALJ held that the amendments were clarifications and that the original service problem was one of technical incompatibility rather than inapplicability of the PAL tariff. Despite exceptions filed by Silverado, the PUC affirmed the decision of the ALJ. Silverado then appealed to the district court, arguing that US West engaged in retroactive ratemaking by charging for the PAL service before its "inmate service amendment" had been accepted. The district court held that since the original PAL tariff preceded this matter and included inmate service, no retroactive ratemaking occurred. The district court also held that US

West could properly change Silverado's service from PBX to PAL. Silverado now appeals to this court on the grounds that US West's action was not permitted under the applicable tariffs existing at the time of the change. Silverado also argues that US West engaged in retroactive ratemaking. We hold that US West could apply the earlier PAL tariff to Silverado and did not engage in retroactive ratemaking.

## II.

### A.

■ Silverado asserts that the proper standard of review in this case is *de novo* because it involves construction of the PAL tariff. We disagree.

■ This case requires us to review a ratemaking decision of the PUC. Ratemaking in public utility matters is a legislative function delegated to the PUC. Colo. Const. art. XXV; *Integrated Network*, 875 P.2d at 1377; *City of Montrose v. P.U.C.*, 629 P.2d 619, 622 (Colo.1981). Because they are made by an administrative agency with considerable technical expertise in the area of utility regulation, the PUC decisions should be accorded due deference. *Integrated Network*, 875 P.2d at 1377. Our review of a PUC decision is limited to determining whether the PUC has pursued its authority regularly, whether its decision is just and reasonable, and whether its conclusions are in accordance with the evidence. *Id.*; § 40–6–113(3), 17 C.R.S. (1993).

### B.

■ Silverado argues that it could not be charged at the PAL rate because no PAL tariff for inmate service existed prior to the amendments approved by the ALJ. US West's position is that it was entitled to transfer Silverado to the PAL lines under the tariff structure existing prior to the

---

**2.** According to the holding, the PUC has defined "resale" as "an activity wherein one entity subscribes to the communications services and facilities of another entity and then reoffers communications services and facilities to the public (with or without 'adding value') for profit." *Integrated Network*, 875 P.2d at 1378.

**3.** One result of the general rate case is that Silverado is a reseller of telecommunications services for purposes of applying US West's tariffs.

amendments.[4] The district court and the ALJ both found that US West was entitled to change Silverado to the PAL rate under the then-existing tariff structure. We agree.

The PUC found that:

the record demonstrates that [Silverado], in its provision of inmate service, is a reseller of local telephone service. Company witnesses testified, and we find this testimony to be credible, that [US West] provides access under the PAL tariff to resellers of local service, such as [Silverado]. The evidence in this proceeding indicates that all other providers of inmate service in Colorado take service from [US West] under the PAL tariff. In fact, [US West] imputes PAL rates to its own inmate services. [US West] also presented evidence that inmate service providers throughout its 14–state region use PAL lines.

. . . .

The evidence here further indicates that [US West] categorizes inmate service such as that provided by [Silverado] as similar to payphone service (i.e. both involve the resale of local service). As such, the company requires all inmate service to take access under the PAL rate. We hold that [US West's] categorization of [Silverado's] service as a PAL service was reasonable. In particular, this categorization is consistent with our stated policy that resellers of basic service should be required to purchase access under a measured rate. In brief then, we hold that the conversion of [Silverado's] lines to the PALs was proper. Since that conversion was appropriate,

Complainant is required to pay for service under the PAL rate.

This decision is within the regular authority of the PUC. The PUC in effect held that Silverado avoided the PAL tariff until its 1991–92 conversion only because of a special accommodation by US West required by Silverado's equipment and that the subsequent conversion of Silverado to the PAL tariff was proper, lawful and consistent with PUC policy because Silverado was a reseller. The PUC rejected Silverado's position that it was entitled to preferential rates and upheld US West's action in converting Silverado to the PAL tariff. The proper application of rates and tariffs is undoubtedly within the regular authority of the PUC. *See* § 40–3–101 *et seq,* 17 C.R.S. (1993).

The decision of the PUC is just and reasonable. The PUC found, as a factual matter, that all other inmate providers, including US West, were subject to the PAL tariff. In order to provide the same treatment to all inmate service providers, the conversion to the PAL tariff was proper and equitable. By transferring Silverado to PAL lines, US West simply placed Silverado on equal terms with the other inmate service providers in order to ensure fair competition.

Additionally, the conclusions of the PUC are in accordance with the evidence. Under *Integrated Network,* the PAL tariff is applicable to resellers of telephone service. As resellers of telephone service, inmate providers such as Silverado were properly subject to the lawful PAL tariff covering resellers.

---

4. The PAL tariff stated, in relevant part:

5.5.7 Public Access Line (PAL) Service
A. Description
1. Public Access Line (PAL) Service is provided for use with customer owned coin/coinless telephones at locations accessible to the public, subject to the availability of existing CO facilities and special operator equipped locations . . .
. . . .
4. Six types of Public Access Lines are available subject to the regulations specified in 5.5.7.B.
*Measured Full Resale PAL Service*
Measured Full Resale PAL Service is a service for which a monthly rate is billed to the customer. In addition to the monthly rate,

usage charges specified herein will apply to all outgoing calls completed on a local basis. This service provides:
--access to the local network;
--free calls to the 911 emergency code;
--direct dialed toll calling.

B. Regulations

7. PAL service is not represented as adapted for data service. PAL service contemplates the provision of satisfactory voice transmission only.
8. Customer owned coin/coinless telephones used in connection with this service will provide coin-free access to the 911 emergency number and to the telephone operator.

Silverado contends that because the tariff does not explicitly refer to "inmate services," the tariff is ambiguous and should be construed against US West. *See Strickland Transportation Co. v. U.S.*, 334 F.2d 172 (5th Cir.1964). We reject this argument.

Because Silverado is a reseller, service could be provided under the first type of PAL line listed in the exchange and network service tariff, which covered "measured full resale PAL service." The tariff generally covers all resale services, including inmate services and, as discussed above, all other inmate providers are charged under the measured full resale PAL service tariff. A specific provision in the tariff is not necessary to accommodate every contingency when a general provision sufficiently addresses the services.

Silverado also asserts that the measured full resale PAL service tariff is incompatible because of various provisions in the tariff. Specifically, Silverado notes that the tariff is provided for use at locations accessible to the public, that the telephone service provides coin free access to the 911 emergency number and the telephone operator, and that the PAL service is not adapted for data transmission. Silverado contends that, because these provisions are incompatible with their inmate service product, the measured rate PAL tariff was inapplicable. We conclude that Silverado does not correctly interpret the tariff.

The measured rate PAL tariff provides a number of options for purchasers of the lines. However, the purchasers are not obligated to take advantage of every service offered under the package. For instance, although the coin free access to the 911 emergency number is provided under the service, the reseller is not obligated to provide that service when it resells the services to its customers. Furthermore, the extra features (*e.g.*, call blocking to certain numbers and fraud protection) are "add-on" features that make Silverado's product unique and distinguishable from the more general measured full resale service. *See Integrated Network*, 875 P.2d at 1378 n. 7; *Am. Tel. & Tel. Co. v. F.C.C.*, 572 F.2d 17, 20 n. 4 (2d Cir.1978). Without such

features, Silverado would have no special product to provide.

Finally, the testimony provided in the record indicates that the voice transmission problems exist in both the PBX and the PAL systems. In both PBX and PAL systems, special equipment is available to mitigate any data transmission problems which may occur. Thus, we are not persuaded by the argument that this limitation makes the tariff inapplicable.

### III.

Silverado's final contention is that US West engaged in retroactive ratemaking. Silverado contends that US West retroactively applied its specialized inmate service tariff, approved after the conversion of Silverado to the PAL lines. The facts of this case do not support a finding of retroactive ratemaking.

Retroactive ratemaking is prohibited. *Colorado Energy Advocacy Office v. Public Serv. Co.*, 704 P.2d 298, 305 (Colo. 1985). The reason for this prohibition is to prevent the unfairness entailed in altering the legal consequences of events or transactions after the fact. *Peoples Natural Gas Co. v. P.U.C.*, 197 Colo. 152, 154, 590 P.2d 960, 962 (1979).

In the present case, US West sought compensation under tariffs existing at the time of conversion and has not attempted to alter the legal consequences and apply the same retroactively. Once Silverado was converted to the PAL tariff as a reseller of telephone service, it was obligated to pay for the service at the rate set forth by the measured full resale PAL tariff. US West did not attempt to apply the new inmate service amendment against Silverado before the amendment was reviewed and approved by the PUC. Rather, US West has properly applied the more general measured service PAL rate existing at the time of conversion. The evil sought to be prevented by the prohibition against retroactive ratemaking is not present here.

### IV.

Because the holding of the PUC is within its authority and expertise, is reasonable, and

is supported by the evidence, we defer to the PUC's decision. Accordingly, we hold that the inmate service was included under the general PAL tariff for measured rate resellers and that US West could switch Silverado's service from PBX trunks to PAL lines. We affirm the judgment of the district court.