John GAMBLE et al., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.

No. 80-7615.

United States Court of Appeals, Fifth Circuit. Unit B

Feb. 13, 1981.

Alan E. Serby, Atlanta, Ga., for petitioners.

Robert B. Nicholson, Margaret G. Halpern, Dept. of Justice, H. Glenn Scammel, Gen. Counsel, I. C. C., Washington, D. C., for respondents.

Kim D. Mann, Washington, D. C., for intervenors Old Dominion, Deaton and The Mason and Dixon Lines.

Clyde W. Carver, Atlanta, Ga., for intervenor B & P Motor Lines, Inc.

Rudolph L. Ennis, Knoxville, Tenn., for intervenors Colonial Refrigerated Transp., Inc., Colonial Fast Freight, Inc. and Claremont Motor Lines, Inc.

Maurice F. Bishop, Birmingham, Ala., for intervenors Ga.-Fla.-Ala. Trans. Co., Bowman Trans., Floyd & Beasley Transfer, Os-

born Trans., Inc., Osborne Truck Line and Hornaday Truck Line.

Keith G. O'Brien, Washington, D. C., for intervenor Int. Broth. of Teamsters, Chauffeurs, etc.

Thomas N. Willess, Washington, D. C., for intervenors East Tex. Motor Freight Lines, Inc., MR & R Trucking, McLean Trucking Co., Mercury Freight Lines, Smith's Transfer Corp. and Wilson Trucking Corp.

Before SIMPSON, RONEY and THOMAS A. CLARK, Circuit Judges.

RONEY, Circuit Judge:

Petitioners seek review of the denial of emergency temporary authority to provide trucking service formerly provided by a carrier which ceased operating. They assert three points: first, the Interstate Commerce Commission (Commission) failed to accord proper attention to the interests of former employees of the defunct carrier; second, it failed to consider the interest of shippers in preserving prior levels of competition; and third, its handling of the license application deprived petitioners of fundamentally fair process. The Commission's decision being neither arbitrary, capricious or unsupported by record evidence, the Petition for Review is denied.

The facts of this case serve to illustrate the expedited fashion in which applications for emergency temporary authority are handled by the Commission. On July 31, 1980, Johnson Motor Lines, Inc. (Johnson) announced it would discontinue its operations effective August 8, 1980. Petitioners Gamble, Harris and Stoud, employees of the Special Commodities Division of Johnson, on behalf of themselves, their truck drivers, their employees and agents, induced Coastal Transport & Trading Co. (Coastal) to file an application for the Johnson routes. Coastal filed the application with the Atlanta regional office of the Commission on August 4, requesting emergency temporary authori-

ty to replace the service formerly provided by Johnson's Special Commodities Division. The application was supported by statements from numerous shippers and from individuals associated with Johnson.

The regional office notified possibly interested carriers by telephone, and approximately sixty such carriers registered protests to the application. The Regional Motor Carrier Board voted on August 8 to deny the application. Coastal hand-delivered a Petition for Reconsideration to the Commission in Washington, D.C. that same afternoon. Two members of a Review Board immediately granted Coastal five days emergency operating authority and certified the administrative appeal to the full Commission, which denied the application on August 13.

Coastal and three former Johnson employees filed a Petition for Review and a Motion for Stay in this Court. A stay was initially granted, but was vacated by the Court on September 2. The case was expedited on the merits and various carriers and the International Brotherhood of Teamsters intervened in support of respondents.

Petitioners' assertion that the Commission employed an incorrect legal standard in disposing of Coastal's application by failing to properly consider the interests of affected employees and the need to preserve competition, requires this Court to re-examine the Interstate Commerce Act in light of the amendments contained in the Motor Carrier Act of 1980. It is helpful to briefly outline the statutory scheme by which the Commission licenses common carriers of property, and to distinguish between permanent, temporary, and emergency temporary authority to operate.

Under the Interstate Commerce Act, the Commission is authorized to grant a common carrier permanent authority to operate only after full administrative proceedings in which interested parties have an opportunity to participate. Commission decisions granting or denying permanent authority must contain adequate findings based on substantial evidence in the administrative record, and otherwise be made in accord-

ance with the Administrative Procedure Act. *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167–68, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962); *United States v. L. A. Tucker Lines, Inc.,* 344 U.S. 33, 36, 73 S.Ct. 67, 68, 97 L.Ed. 54 (1952). Permanent authority proceedings are often complicated, involving large evidentiary records, and may take several months or years to conclude. In the meantime, shippers may have an immediate need for the proposed service which no licensed carrier is capable of meeting. To allow prompt institution of service in these circumstances, Congress has empowered the Commission to grant temporary authority to operate until an application for permanent authority can be processed. 49 U.S.C.A. § 10928.

The Motor Carrier Act of 1980 does not alter this basic statutory scheme. It does, however, revise the standard to be applied by the Commission in making permanent licensing decisions. The principal goals of the legislation, as reflected in the amendments to the National Transportation Policy, 49 U.S.C.A. § 10101, and to the section of permanent licensing, 49 U.S.C.A. § 10922, are to promote greater competition by allowing easier carrier entry, to simplify and expedite the certification process, and to lessen restrictions on motor carrier operations.

With regard to interim operating authority, the 1980 Act amends 49 U.S.C.A. § 10928 to specifically permit grants of emergency temporary as well as temporary authority, and to require accelerated disposition of such applications. Prior to amendment, temporary authority could be granted for a period of 180 days, 49 U.S.C. § 10928 (Supp. 1978), and by regulation, extended until determination of a permanent authority application, 49 C.F.R. § 1101.1 (1979). Section 10928 now permits temporary authority to be granted for up to 270 days, 49 U.S.C.A. § 10928(b)(1), and provides for *emergency* temporary authority for thirty days, with extensions for not more than ninety days, as follows:

the Commission, pursuant to such regulations as the Commission may issue, may grant a motor carrier of property emergency temporary authority to provide transportation to a place or in an area having no motor carrier of property capable of meeting the immediate needs of the place or area if the Commission determines that, due to emergency conditions, there is not sufficient time to process an application for temporary authority under subsection (b) of this section. Unless suspended or revoked, the Commission may grant the emergency temporary authority for not more than 30 days, and the Commission may extend such authority for a period of not more than 90 days. A grant of emergency temporary authority does not establish a presumption that permanent authority to provide transportation will be granted under this subchapter.

49 U.S.C.A. § 10928(c)(1). The Commission must take final action on an emergency temporary application no later than fifteen days after it is filed, 49 U.S.C.A. § 10928(c)(2), and on a temporary application no later than ninety days after filing, 49 U.S.C.A. § 10928(b)(2).

Judicial review of temporary licensing decisions has traditionally been narrower than that accorded permanent licensing decisions. The standard has been whether the Commission's action was arbitrary or capricious, an abuse of discretion, or unsupported by *some* evidence in the record. *Georgia-Florida-Alabama Transportation Co. v. ICC,* 614 F.2d 1078, 1080 (5th Cir. 1980); *East Coast Transportation Co. v. United States,* 556 F.2d 741, 742 (5th Cir. 1977).

While petitioners recognize the scope of review of agency orders as to temporary licensing has traditionally been narrow, they argue that in enacting the Motor Carrier Act of 1980 Congress intended to limit the wide discretion previously enjoyed by the Commission and thus to minimize the judicial deference normally given to Commission expertise. While this argument may have some validity in relation to permanent licensing, *see generally* H.R.Rep. No.96–1069, 96th Cong., 2d Sess. 3–4 (1980), *reprinted in* [1980] U.S.Code Cong. & Ad.

News, pp. 4109, 4111–12; Cong.Rec. 96th Cong., 2d Sess., S 7685 (June 20, 1980) (remarks of Sen. Cannon), the legislation and legislative history do not support the argument as applied to emergency authority. The Commission's regulations even prior to amendment of section 10928 recognized a difference between emergency temporary and temporary authority. The amendments merely incorporate the Commission's previous administrative distinction between the two and set strict deadlines for Commission action on these applications. Congress did not disturb the narrow "immediate needs" standard of the existing temporary authority section, nor the provision that the Commission need not comply with the Administrative Procedure Act in handling interim applications. Section 10928 as amended reflects heightened congressional appreciation of the need for procedural flexibility and quick action in emergency licensing situations. See H.R.Rep.No.96–1069, 96th Cong., 2d Sess. 35–36 (1980), reprinted in [1980] U.S.Code Cong. & Ad.News, pp. 4109, 4143–44. It does not, however, give the courts any greater role in restricting Commission action.

The obvious consequence of more rigid statutory requirements for expedited decisionmaking based on informal procedures is to make judicial review of Commission action even more difficult. The fifteen day time limitation on administrative decisionmaking argues against protracted review procedures. Short grants of authority likewise create a need for a dispositive determination at the earliest level. Logically, if review of temporary authority decisions is narrower than that of permanent authority decisions, then the scope of review accorded emergency temporary authority decisions arguably might be even more circumscribed. We need not decide here, however, whether the standard of review regarding emergency temporary authority should differ from that already devised for review of temporary authority, because even applying the latter standard, we find no basis for overturning the Commission's decision.

■ Petitioners argue the Commission erred in failing to consider the need of former Johnson employees for the grant of authority here. The Commission asserts that it need not consider employment interests in disposing of emergency licensing applications and, alternatively, that the Regional Board's field report note that "[e]xisting carrier[s] indicate that they have equipment standing idle, and are having to let employees go because of lack of work," indicates that the Board did in fact examine the effect granting Coastal's application would have on employment in the area.

The statute refers only to the problem of ensuring "transportation ... in an area having no motor carrier of property capable of meeting the immediate needs of the ... area." 49 U.S.C.A. § 10928(c)(1) (emphasis added). The concern apparently was for the need of shippers for service not available from existing carriers. Absent a showing of this need, the Commission cannot be faulted for not giving greater consideration to the needs of employees of the defunct carrier.

■ Neither did the Commission err in failing to consider the interest of shippers in preserving the prior level of competition in the affected market. We need not decide whether the need for competition can ever be a basis for granting emergency authority under section 10928(c). See generally Brink's, Inc. v. United States, 613 F.2d 1079 (D.C.Cir.1979). The record in this case is devoid of any evidence to indicate that competition in fact was lacking. Although Johnson had ceased operating, the number of protesting carriers with authority to truck over some if not all of Johnson's territory is evidence that a measure of competition was present. Nothing in the record indicates otherwise.

Petitioners' arguments would apparently mandate an emergency temporary license in all cases where the applicant would hire employees of a carrier then going out of business. The employees could always show a need for employment and the loss of the carrier would always reduce competition to some extent. The statute, however,

focuses on the need for transportation, and in these expedited emergency cases, the Commission can also.

▮ Petitioners do not vigorously challenge the sufficiency of the record to support the Commission's finding that Coastal failed to establish an immediate and urgent need among shippers for its service. Although numerous shippers supported Coastal's application and stated that discontinuance of the type of service provided by Johnson's Special Commodities Division would disrupt their shipping and create numerous problems, none indicated they had unsuccessfully attempted to obtain the service from existing carriers, *see* 49 C.F.R. § 1131.2(c)(8) and (9) (1979), or that the service available from existing carriers was in some way inadequate, or that the emergency authority was necessary for transportation for any other reason. On the other hand, some sixty carriers objected orally to the application and several indicated by letter they could provide the service needed. With this conflicting evidence, petitioners have failed to show the Commission's decision to deny Coastal's application was arbitrary, capricious or unsupported by sufficient evidence.

▮ Petitioners also allege the Commissioner's handling of the application was fundamentally unfair. We have reviewed the administrative record and find no support for their various allegations. Given the breadth of Coastal's application and the time factor involved, the notice given by the Commission to interested carriers, even if overbroad in hindsight, did not substantially prejudice petitioners. This Court has repeatedly held that the Commission need not give reasons for its action so long as a court on review can glean an understanding of the decision from the record. *Georgia-Florida-Alabama Transportation Co. v. ICC*, 614 F.2d at 1080; *East Texas Motor Freight Lines, Inc. v. United States*, 593 F.2d 691 (5th Cir. 1979). Petitioners have cited no compelling authority that they were entitled to oral argument before the Commission as a matter of law. Frequently oral argument is not available even on applications for permanent authority. *See* 49 C.F.R. § 1100.43 (1979).

The Petition for Review is DENIED.