**TURNER BROS. TRUCKING COMPANY, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

and

**Great Plains Transports, Inc., Intervening Respondent.**

**No. 81–1669.**

United States Court of Appeals, Tenth Circuit.

June 20, 1983.

J. Michael Alexander of Hightower, Alexander, Cook & Birnbaum, P.C., Dallas, Tex., for petitioner.

William F. Baxter, Asst. Atty. Gen., Robert B. Nicholson and Susan J. Atkinson, Attys., Dept. of Justice, Richard A. Allen, Gen. Counsel, Ellen K. Schall, Deputy Associate Gen. Counsel, and Edward J. O'Meara, Atty., I.C.C., Washington, D.C., for respondents.

Lloyd Scurlock and Clayte Binion of Scurlock, Binion, Brackett & Oldham, Inc., Fort Worth, Tex., for intervenor respondent.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

This case has been submitted to us on the written briefs, all parties waiving oral argument.

Turner Bros. Trucking Company, Inc., the petitioner in the present proceeding, seeks to set aside a decision of the Interstate Commerce Commission which granted Great Plains Transports, Inc. permanent authorization to transport equipment used in petroleum production between points in Louisiana, Oklahoma, and Texas. Turner's basic position is that in granting such authority to Great Plains, the ICC acted arbitrarily, capriciously, in abuse of its discretion and otherwise not in accord with appli-

cable law. We disagree, and therefore affirm the decision of the ICC.

Great Plains was founded in 1977 and is headquartered near Clinton, Oklahoma. For several years it has operated as a carrier of oil field commodities in *intrastate* service in both Oklahoma and Texas. With time, the carrier's operations have grown and it has been financially successful. Great Plains twice operated in *interstate* service between points in Oklahoma, Texas, and Louisiana for 90-day periods under appropriate grants of emergency temporary authority issued by the ICC. It operates a moderate size fleet of generally heavy-duty equipment suitable for service to off-road oil well sites, which includes units with rolling tailboards and winches specially adapted for service to the oil well drilling industry.

Great Plains' application for authority to operate between points in Louisiana, Oklahoma, and Texas was initially opposed by some fourteen carriers. At the hearing before the Administrative Law Judge, three carriers appeared in protest to the application. After hearing, the ALJ, after considering the evidence presented by all parties, granted Great Plains' application. Turner Bros. alone filed exception to the ALJ's decision. Thereafter, the ICC, Division 2 thereof, affirmed the ALJ's decision. It is the ICC's final decision which Turner Bros. now seeks to have set aside.

At the hearing before the ALJ, Great Plains' application was supported by the statements of five shippers who indicated that they would do interstate business with Great Plains should the application be granted. Also, Great Plains offered an abstract of interstate shipments which it handled while operating for six months under emergency temporary authority. The abstract showed that Great Plains handled 350 interstate shipments consisting of over eleven million pounds and over $275,000 in gross revenue during that period of time. In turn, Turner Bros. presented evidence that while Great Plains was operating interstate under emergency temporary authority, it

(Turner Bros.) was forced to close two of its terminals.

As indicated, the ALJ found that the service for which Great Plains sought authority would fulfill a public need and that Great Plains was fit, willing and able to perform the service. The ALJ recognized that Turner Bros. had shown divertible traffic and resulting lost revenue, but concluded that such showing was not "inconsistent with the public convenience and necessity."

Turner Bros.' basic position is that the record does not support the ICC's determination that the granting of Great Plains' application was in the public interest. Turner Bros. points out that the five supporting shippers had in the past only used Great Plains for *intrastate* shipments. This is, of course, correct because Great Plains did not have any authority from the ICC to operate interstate, except for the two 90-day periods when it was permitted to operate interstate under emergency temporary authority. In this regard, several of these supporting shippers had, in fact, availed themselves of Great Plains' interstate authority. Turner Bros. argues that there is nothing in the record to support the grant of authority to transport into Louisiana. As concerns this particular matter, our reading of the record indicates that Hunt Energy Corporation and the Apache Corporation, two of the five supporting shippers, indicated that they had business interests in Louisiana and intended to use Great Plains in connection with such business. In short, we think the record supports the ICC's decision.

Turner Bros. further contends that the ALJ placed a greater burden of proof on it than it did on Great Plains, the applicant. We find nothing to support this contention. Turner Bros. concedes that under existing rules and regulations an applicant for interstate authority has only a "low burden of proof" and certainly Great Plains has met that test.

Turner Bros. also asserts that in granting Great Plains' application, the ICC failed to properly consider the National Transporta-

tion Policy as set forth in 49 U.S.C. § 10101 and the various provisions of the Motor Carrier Act of 1980. Pub.L. 96–296, July 1, 1980, 94 Stat. 793. We perceive no such lack of consideration. In this connection, the Fifth Circuit in *Gamble v. I.C.C.,* 636 F.2d 1101, 1103 (5th Cir.1981) commented as follows:

> The Motor Carrier Act of 1980 does not alter this basic statutory scheme. It does, however, revise the standard to be applied by the Commission in making permanent licensing decisions. The principal goals of the legislation, as reflected in the amendments to the National Transportation Policy, 49 U.S.C.A. § 10101, and to the section of permanent licensing, 49 U.S.C.A. § 10922, are to promote greater competition by allowing easier carrier entry, to simplify and expedite the certification process, and to lessen restrictions on motor carrier operations.

Decision affirmed.