**GAMBLER'S EXPRESS INC.,**
Petitioner–Appellant,

v.

**PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO; Robert L. Temmer, Gary L. Nakarado, Christine E.M. Alvarez, Commissioners; and Blackjack Shuttle Express, Inc., Respondents–Appellees.**

**No. 93SA89.**

Supreme Court of Colorado,
En Banc.

Feb. 14, 1994.

Rehearing Denied March 7, 1994.

---

John E. Archibold, Denver, for petitioner-appellant.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Merrill Shields, Deputy Atty. Gen., Richard Djokic, First Asst. Atty. Gen., Carol Smith Rising, Asst. Atty. Gen., Regulatory Law Section, Denver, for respondents-appellees Public Utilities Com'n of the State of Colo., and Robert L. Temmer, Gary L. Nakarado, Christine E.M. Alvarez, Com'rs.

James F. Frost, Denver, for respondent-appellee Blackjack Shuttle Express, Inc.

Justice VOLLACK delivered the Opinion of the Court.

In this proceeding, Gambler's Express Inc. (Gambler's) appeals the order of the Adams County District Court holding that the Public Utilities Commission (the PUC) had not violated section 40–6–120(1), 17 C.R.S. (1993).[1] Gambler's now challenges the right of the PUC to extend temporary authority to Blackjack Shuttle Express, Inc. (Blackjack), a common motor carrier, because Blackjack's request was not approved by the PUC before the initial term of the temporary authority had expired. We conclude that the PUC had jurisdiction to consider the request to extend Blackjack's temporary authority. We accordingly affirm the judgment of the district court.

I.

On November 8, 1991, the PUC issued an order granting Blackjack temporary authori-

---

1. We have jurisdiction over this matter pursuant to § 40–6–115(5), 17 C.R.S. (1993).

ty to operate as a common carrier by motor vehicle in transporting passengers between the Denver metropolitan area and the gambling facilities in Black Hawk and Central City.[2] The temporary authority permitted Blackjack to conduct operations for a period of 165 days, which expired on April 22, 1992. In granting Blackjack temporary authority, the PUC noted that, although Gambler's was granted permanent authority to transport passengers dating from September 10, 1991,[3] it was not providing any service at that time.[4] The PUC therefore found that Blackjack's temporary passenger service satisfied the elements of section 40–6–120(1) requiring that there be an "immediate and urgent need," and that no other carrier service "was capable of meeting that need." [5]

On April 20, 1992, two days before Blackjack's temporary authority expired, Blackjack petitioned the PUC for an extension of its temporary authority. Blackjack requested an extension since the PUC had not yet rendered a final administrative decision on Blackjack's application for permanent authority in conducting operations as a common carrier by motor vehicle for the same services. Gambler's opposed the extension of Blackjack's temporary authority.[6]

On May 12, 1992, the administrative law judge (the ALJ) issued an interim decision granting the requested extension for temporary authority, finding that good cause for the extension had been shown.[7] Gambler's filed a motion to vacate the interim order, arguing that the ALJ lacked jurisdiction to extend the temporary authority after April 22, 1992. The ALJ agreed with Gambler's argument and, on June 15, 1992, entered an interim order setting aside his initial decision extending Blackjack's temporary authority.

The ALJ denied Blackjack's motion to set aside or modify the order vacating the extension of the temporary authority, and a motion for stay of that decision. Blackjack filed new 1992 applications for emergency temporary authority and for temporary authority to provide essentially the same services. The PUC granted Blackjack the emergency temporary authority for fifteen days on June 19, 1992. Gambler's filed a motion to dismiss the latest temporary authority application of Blackjack. Gambler's additionally requested the PUC to reconsider its decision granting the emergency temporary authority. The PUC granted Gambler's motion to dismiss Blackjack's 1992 temporary authority application, and agreed to reconsider its decision granting the emergency temporary authority. The PUC reversed its decision granting the emergency temporary authority, and dismissed the emergency temporary authority. On July 1, 1992, the PUC, on its own motion, reconsidered the ALJ's decision setting aside the extension of Blackjack's temporary authority. The PUC granted Blackjack's petition to extend its temporary authority, *nunc pro tunc* as of April 22, 1992, until a final administrative ruling was rendered in Blackjack's permanent authority application.

On July 22, 1992, Gambler's filed an application for reconsideration, rehearing, and reargument (RRR) of this decision. On Au-

2. The PUC approved Blackjack's application for temporary authority pursuant to § 40–6–120(1), 17 C.R.S. (1993).

3. The PUC granted Gambler's certificate of public convenience and necessity which authorized Gambler's to transport passengers between Denver, including southeast Denver and certain portions of downtown Denver and Stapleton International Airport, and Black Hawk and Central City.

4. In fact, Gambler's did not begin providing its service to transport passengers until January 10, 1992.

5. In granting Blackjack's application for temporary authority, the PUC recognized that Blackjack's requested authority substantially overlapped with Gambler's authorized opera-

tions. However, Blackjack sought service to certain areas not within the purview of Gambler's service territory.

6. On May 11, 1992, Blackjack supplemented its petition to extend temporary authority by filing approximately forty-six verified statements from the public attempting to show that a continuing public need existed for the services being rendered by Blackjack under its temporary authority. Gambler's did not produce any contrary evidence; rather, Gambler's argued that another carrier (Gambler's) existed that could meet the public's needs.

7. The ALJ issued its order twenty-three days after the request for extension was submitted.

gust 19, 1992, the PUC granted Gambler's application for RRR, and modified its July 1, 1992, decision on Blackjack's extension on temporary authority application to reflect that the decision would not be entered *nunc pro tunc* as of April 22, 1992. The PUC held, however, that Blackjack's "legally timely filing of a motion for extension tolled the expiration date for the original grant of authority."

On November 5, 1992, Gambler's filed for review of the PUC's decisions in the Adams County District Court. The district court affirmed the PUC's decision. The district court determined that the PUC had not violated section 40–6–120(1). The district court further concluded that the provisions of section 40–6–120, subsections (1) and (3), when read together,[8] are inconsistent, and concluded that the PUC's interpretation was valid.[9] The district court found that the PUC's interpretation of the statute, which should be given deference, was reasonable. The district court held that the PUC had not engaged in impermissible *ex post facto* legislative action. Finally, the district court held that the PUC had not violated the transcript statute, § 40–6–113, 17 C.R.S. (1993). The district court denied Gambler's C.R.C.P. 59

motion to amend the findings and the judgment. This appeal followed. Subsequent to the filing of this appeal, the Commission granted permanent authority to Blackjack on June 2, 1993, in the non-overlapping service areas.[10]

## II.

◼◼◼  The primary issue for us to resolve at this juncture is one of statutory interpretation, and involves whether the PUC retained its jurisdiction where a carrier's request to extend temporary authority is not acted upon by the PUC prior to the expiration of the initial term of the temporary authority.[11]

The authority of the PUC to grant temporary authority is set forth in section 40–6–120(1) which provides:

> To enable the provision of carrier service for which there appears to be an immediate and urgent need to any point or within a territory having no carrier service capable of meeting such need, the commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a com-

8. Subsection (1) of § 40–6–120 provides in pertinent part that temporary authority

shall be valid for such time as the commission specifies, but for not more than an aggregate of one hundred eighty days, unless for good cause shown the commission extends such temporary authority for a period of time which may extend until a final administrative decision is rendered, and shall create no presumption that corresponding permanent authority will be granted thereafter.

Subsection (3) of § 40–6–120 provides in pertinent part that

[t]he maximum time period of any temporary authority or approval shall not be extended or renewed under the provisions of article 4 of title 24, C.R.S., or otherwise.

9. The PUC decision stated:

Insofar as the maximum time period for which a carrier may operate pursuant to a temporary authority is concerned, the provisions of § 40–6–120, C.R.S., read as a whole, limit the Commission's power to grant temporary authorities in one respect—a carrier may not be authorized to conduct operations after a final administrative decision is rendered. The statute does not support Gamblers' contention that once the authority has lapsed, the Com-

mission may not extend or renew it even if the maximum time period would not otherwise be exceeded. We note that Gamblers has cited no authority for its argument. Furthermore, we find that Gamblers' hypertechnical contentions are not consistent with the statutory intent.

10. Blackjack filed its application for permanent authority on September 27, 1991.

11. Although Blackjack's interim authority has expired and Blackjack is now operating under permanent authority, we find that the instant appeal is justiciable, and quickly dispose of Blackjack's mootness claim. In *Brink's, Inc. v. United States*, 613 F.2d 1079 (D.C.Cir.1979), the court heard a petition to vacate temporary authority, even though the carrier had already received permanent authority.

[C]onsideration. of the merits of this case is appropriate at this time, rather than a dismissal for mootness which would leave ... the motor carriers subject to the distinct possibility that they would never learn from the courts the parameters of the agency's temporary authority in the not unusual situation presented in this case.

*Id.* at 1083. We hold *Brink's* to be persuasive on the mootness issue.

mon carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the commission specifies but for not more than an aggregate of one hundred eighty days, unless for good cause shown the commission extends such temporary authority for a period of time which may extend until a final administrative decision is rendered, and shall create no presumption that corresponding permanent authority will be granted thereafter.

Subsection (3) provides in part:

The maximum time period of any temporary authority or approval shall not be extended or renewed under the provisions of article 4 of title 24, C.R.S., or otherwise.

■ We begin our analysis of section 40–6–120 by applying well-established principles of statutory construction. In construing a statute, the court must consider the underlying purpose for creating the statute in order to give effect to the intent of the legislature. *Meyers v. Price,* 842 P.2d 229, 231 (Colo.1992); *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1111 (Colo.1990). To discern the intent of the legislature, we look to the language of the statute, *B.B. v. People,* 785 P.2d 132, 138 (Colo.1990), and give effect to the words and phrases according to their plain and obvious meaning. *People v. District Court,* 713 P.2d 918, 921 (Colo.1986). "When interpreting a statute each provision must be construed in harmony with the overall statutory scheme, so as to accomplish the purpose for which [the statute] was enacted." *People v. Johnson,* 797 P.2d 1296, 1297 (Colo. 1990).

■ Because the statute is silent on this issue, our review of the legislative history behind this statute is particularly probative. *In the Matter of the Estate of Royal,* 826 P.2d 1236 (Colo.1992). The 1983 Hearings of the House Judiciary Committee reveal that the purpose for extending temporary authority is to prevent a carrier from suffering financial losses by interrupting its services after expiration of its temporary authority but prior to the PUC's rendering a decision on the carrier's permanent authority application. *Hearings on H.B. 1284 Before the House Judiciary Committee,* 54th Gen.Assembly, 1st Reg.Sess. (Audio Tape 83–6, Feb. 1, 1983). Nothing within the legislative history contemplates an intent to prohibit the PUC from acting upon a timely motion for extension even after the expiration date of the temporary authority. It therefore can be reasonably inferred that the legislature intended the PUC to have the latitude to extend temporary authority until a final administrative decision on permanent authority is rendered. This inference logically follows since carriers often apply for grants of temporary authority with the intent that they will mature into grants of permanent authority.

In analyzing the statute, we note that section 40–6–120(1) authorizes the PUC to grant a temporary authority for no more than an aggregate of 180 days. If good cause is shown, the PUC may extend the temporary authority until a final administrative decision is rendered. The plain language of subsection (1) therefore indicates that the maximum time period of a temporary authority is "until a final administrative decision is rendered." Subsection (1) provides the criteria needed to extend temporary authority and, based on the language of subsection (3), one is foreclosed from relying upon the State Administrative Procedure Act or any other statutory provision to continue operations beyond the temporary authority period.

Blackjack timely applied for an extension of its temporary authority prior to the expiration of the original period. The PUC considered the application within a reasonable time, twenty-three days, and then issued its order. The PUC's interpretation of the temporary authority statute merely preserves the status quo pending its decision on the motion to extend Blackjack's temporary authority. The PUC's interpretation is reasonable and does not contravene the language of the statute. Furthermore, the statute should not be read to impose more rigid standards on an extension of temporary authority than a grant of temporary authority.

From the language of the statute, and from our review of the legislative history and purpose behind section 40–6–120(1), it can

reasonably be inferred that the timely filing of a request for extension of temporary authority gives the PUC jurisdiction to act on the request after the original time period for temporary authority has expired so long as the PUC acts within a reasonable time frame.

Our interpretation of the statute further conforms with the way in which the Interstate Commerce Act has been interpreted given the absence of a clear congressional requirement dictating procedure. Other courts have construed similar language in the Interstate Commerce Act, 49 U.S.C. § 10928 (1988),[12] in a manner that supports our reading of section 40–6–120.

■ In examining the legislative purpose behind the Interstate Commerce Act, 49 U.S.C.A. § 310(a) (1963),[13] the court in *American Trucking Associations, Inc. v. United States*, 602 F.2d 444 (D.C.Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979), found that Congress intended "to invest the Commission with broad discretion in discharge of its delegated responsibilities and did not intend to constrain [it] by prescribing rigid procedural rules." The Commission has discretionary authority to enforce continual service of a carrier while a determination of matters is pending before it. *Whitfield Transp., Inc. v. United States*, 373 F.Supp. 1032 (D.N.M.1974). The statutory procedure of granting authority in three stages—temporary authority, extension of temporary authority, and permanent authority—facilitates continuity in the carrier's operations while the Commission determines a carrier's fitness to be granted permanent authority. *See Gamble v. Interstate Commerce Commission*, 636 F.2d 1101, 1103 (5th Cir.1981).

**12.** Title 49 U.S.C.A. § 10928(c)(1) (1988) provides in part as follows:

[T]he Commission, pursuant to such regulations as the Commission may issue, may grant a motor carrier emergency temporary authority to provide transportation to a place or in an area having no motor carrier capable of meeting the immediate needs of the place or area if the Commission determines that, due to emergency conditions, there is not sufficient time to process an application for temporary authority under subsection (b) of this section.

We therefore hold that the timely filing of a request for extension of temporary authority gives the PUC jurisdiction to act on the request after the original time period for temporary authority has expired so long as the PUC acts within a reasonable time frame.

### III.

Gambler's additionally raises several collateral arguments which we dispose of at this point.

### A. Ex Post Facto Legislation

Gambler's maintains that the district court erred in ruling that the PUC had not engaged in unconstitutional *ex post facto* and retrospective lawmaking.

■ We do not agree with Gambler's position that extending the temporary authority after the initial time period had expired constitutes *ex post facto* or retroactive legislative action under the Colorado Constitution, article II, section 11. Article II, section 11, of the state constitution provides that "[n]o ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly."

■ This constitutional provision has interpreted retrospective legislation as that which " 'takes away or impairs [any] vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed.' " *Colorado Energy Advocacy Office v. Public Serv. Co.*, 704 P.2d 298, 305 (Colo.1985) (quoting *Denver, South Park & Pacific Ry. Co. v.*

This provision by its plain language authorizes the Interstate Commerce Commission to specifically permit grants of emergency temporary as well as temporary authority, and to require accelerated dispositions of such applications.

**13.** This section was repealed in 1978. Title 49 U.S.C.A. § 10928 (1988) replaces the prior authority granted by 49 U.S.C.A. § 310(a) (1963), and has substantially similar language to the repealed statute with minor changes to the time requirements.

*Woodward,* 4 Colo. 162, 167 (1878)); *Peoples Natural Gas v. Public Utils. Comm'n,* 197 Colo. 152, 155, 590 P.2d 960, 962 (1979). "The fact that there was [a twenty-one day period] between the request for [temporary authority] and the Commission's decision does not render the Commission's action retrospective within the meaning of the Colo. Const. Art. II, § 11." *Peoples Natural Gas v. Public Utils. Comm'n,* 197 Colo. at 156, 590 P.2d at 963. Contrary to Gambler's contention, the extension of temporary authority did not impair a vested right or impose a new duty with respect to past transactions since the time period was limited to when the PUC was deciding whether to grant the requested extension.

### B. Findings of Good Cause

Gambler's additionally contends that the district court erred in overruling the administrative law judge's finding of fact and not acknowledging that the PUC had violated section 40–6–120(1) by its failure to make new findings of good cause to justify extending Blackjack's temporary authority.

■■■ We are satisfied that the evidence before the PUC at the time of the original grant of temporary authority satisfied the evidentiary support for extending it. The PUC correctly determined that, in ruling upon a motion for extension of a temporary authority, it was not necessary to make new findings demonstrating "an immediate and urgent need for service," and demonstrating that "no other carrier service is capable of meeting that need," since section 40–6–120(1) merely requires a showing of good cause for extending temporary authority. The trial court's interim findings were based on the documents filed in support of the motion for extension of temporary authority which showed that the public relied on and had become familiar with Blackjack's passenger service pursuant to its temporary authority, and that Blackjack's application for permanent authority was presently pending before the PUC. We find no merit to Gambler's contention.

### C. Transcript of ALJ Hearing

■■■ Gambler's argues that the PUC erred when it failed to obtain a transcript of the hearing on Blackjack's request to stay the ALJ's decision setting aside his original decision extending Blackjack's temporary authority. We have reviewed the administrative record and find that the PUC was not required to review a transcript of that hearing since the PUC did not disturb the ALJ's findings of fact. Rather, the PUC adopted the ALJ's findings of fact in their entirety from the ALJ's decision extending Blackjack's temporary authority. Gambler's has cited no compelling authority that the PUC was required to review the transcript of the hearing.

### D. Section 40–6–120(3)

■■■ Gambler's finally maintains that a carrier is foreclosed by section 40–6–120(3) from continuing operations beyond the 180–day period if a carrier has failed to obtain an extension of the temporary authority before its expiration. Gambler's main contention is that, once the temporary authority expired on April 22, 1992, the PUC was without jurisdiction to extend it since "there was nothing to extend." Gambler's relies on the Public Utilities Commission's Rules of Practice and Procedure (C.R.P.P.) 50(j)(4), which provides that a motion for extension of temporary authority *should* be filed twenty days before expiration.

Section 40–6–120 does not statutorily mandate that a motion to extend temporary authority be filed within that twenty-day period prior to the expiration of temporary authority. We find the language in C.R.P.P 50(j)(4) to be clearly directory, rather than mandatory. We therefore reject this legal fiction and disagree with Gambler's strained interpretation of section 40–6–120.

### IV.

For the foregoing reasons, we conclude that the PUC has jurisdiction under section 40–6–120(1) to consider the timely filing of a request for the extension of temporary authority, after the original period for temporary authority has run, so long as the PUC

acts within a reasonable time frame. We further note that a contrary outcome would be inconsistent with the general purpose that the statute is designed to achieve.[14] Accordingly, the judgment of the trial court is affirmed.

ERICKSON, J., dissents, and SCOTT, J., joins in the dissent.

SCOTT, J., dissents, and ERICKSON, J., joins in the dissent.

Justice ERICKSON dissenting:

Although the Public Utilities Commission (PUC) adopts, and the majority embraces, a reasonable method for extending the temporary authority authorized by the General Assembly, the plain language of section 40–6–120(1), 17 C.R.S. (1993), prohibits the statutory construction employed. The statute provides that if the PUC fails to approve a request to extend temporary authority within the statutorily mandated time and before the initial term of temporary authority expires, the PUC may not extend the grant of temporary authority. Because the plain language of the statute is dispositive, I would reverse the judgment of the district court.

Our primary task in construing a statute is to give effect to the intent of the General Assembly. *Farmer's Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991). To discern intent, we first look to the plain language of the statute. *People v. Terry,* 791 P.2d 374 (Colo.1990). If the language of the statute is clear and the intent of the General Assembly may be discerned with certainty, it is not necessary to resort to other rules of statutory interpretation. *McKinney v. Kautzky,* 801 P.2d 508 (Colo.1990). We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant, or mandate. *See Schlessinger v. Schlessinger,* 796 P.2d 1385 (Colo.1990) (holding that the court should be careful to avoid judicial legislation by adding to a statute that which the legislature did not

deem proper); *Jones v. People,* 155 Colo. 148, 393 P.2d 366 (1964) (stating that the court may not change the laws enacted by the legislature).

Subsection (1) of section 40–6–120 provides:

> To enable the provision of carrier service for which there appears to be an immediate and urgent need to any point or within a territory having no carrier service capable of meeting such need, the commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the commission specifies, but for not more than an aggregate of one hundred eighty days, unless for good cause shown the commission extends such temporary authority for a period of time which may extend until a final administrative decision is rendered, and shall create no presumption that corresponding permanent authority will be granted thereafter.

Nothing in the language of the statute gives the PUC authority to consider extensions of the initial grant beyond 180 days. In my view, simply because the statute is silent, we should not read the statute to accomplish something the plain language does not permit. Although a PUC decision interpreting a statute that regulates agency action must be given weight, *Trinity Universal Ins. Co. v. Hall,* 690 P.2d 227 (Colo.1984), a PUC interpretation of a statute cannot be contrary to the plain language of the statute. *See Three Bells Ranch Associates v. Cache La Poudre Water User's Ass'n,* 758 P.2d 164 (Colo.1988) (stating that court deference to agency interpretation of a statute is not compelled when the language of the statute is clear).

The majority notes that the purpose of section 40–6–120 is to "prevent a carrier from suffering financial losses by interrupt-

---

**14.** We do not need to consider the PUC's tolling theory, addressed by the district court (i.e., that the expiration period is tolled pending determination of the temporary authority request by the PUC), since that court arrived at the correct result. Because Blackjack timely filed its request for extension of temporary authority within the 180–day period, and because § 40–6–120 clearly does not contain a tolling provision, we find our interpretation of § 40–6–120 to be consistent with the statutory purpose.

ing its services after expiration of its temporary authority but prior to the PUC's rendering a decision on the carrier's permanent authority application." Maj. op. at ——. I do not disagree. However, giving effect to the plain language of the statute and holding that the PUC may not act to grant an extension beyond 180 days does not frustrate the purpose of the statute. Carriers will not suffer financial loss if they request, and the PUC grants, an extension of temporary authority in a timely manner.

Even in this case, the intent of the General Assembly was not frustrated. Although the PUC delayed the grant of temporary authority beyond the statutorily required time, Blackjack Shuttle Express, Inc. (Blackjack), did not request an extension until two days before the expiration of the 165–day temporary authority. The majority states that this request was "timely." Maj. op. at 411. It was not. The PUC's Rule of Practice and Procedure 50(j)(4) provides that a "motion for an extension of [temporary authority] should be filed at least twenty days before expiration" so that the request for an extension can determined before the temporary authority expires. Section 40–6–120(1) requires a showing of good cause to obtain an extension of temporary authority beyond the 180–day period and to obtain protection of temporary authority until the administrative processes are completed.

Therefore, if Blackjack complied with the PUC rule which was enacted as a result of the statutory time limitation, the purpose of the statute would have been satisfied. In my view, we should not rewrite the statute to give one group the benefit of the statute when that group failed to comply with the PUC rules.

The majority relies on Blackjack's filing of a request for an extension as the crucial event that somehow "tolls" the 180–day period. The plain wording of the statute requires that the initial temporary authority may not be for more than an aggregate of 180 days, and extensions can only be granted for good cause during the 180–day period. There is no statutory source of authority for the proposition that a "timely" filing of a request for extension "tolls" the operation of section 40–6–120(1).

The General Assembly could have provided that a carrier operating under initial temporary authority could continue to operate until the PUC acted upon a timely request for an extension of that temporary authority. For example, such a scheme is specifically created in the State Administrative Procedure Act. *See* § 24–4–104(7), 10A C.R.S. (1993 Supp.) (stating that a licensee may continue under his license until an administrative agency has acted upon a request for renewal). The legislature made no provision for tolling the statute. Subsection (3) of section 40–6–120 specifically forecloses that possibility by barring the use of the State Administrative Procedure Act or any alternate vehicle for renewing or extending temporary grants of authority.[1] If the filing of a request may toll the statutory time limit, as the majority and PUC suggest, temporary authority may theoretically become a permanent authority if the PUC never makes a determination. In my view, this was not the intent of the General Assembly when it enacted section 40–6–120, 17 C.R.S. (1993).

Accordingly, I dissent.

I am authorized to say that Justice SCOTT joins in this dissent.

Justice SCOTT dissenting:

I join the dissent of Justice Erickson. I write separately, however, to make clear that the deference the majority grants to the Public Utilities Commission not only falls short of being compelled, it is not due.

An agency decision interpreting a statute which it regulates is entitled to consideration and, in many instances, deference by courts. *Trinity Universal Ins. Co. v. Hall*, 690 P.2d 227 (Colo.1984). However, an agency's decision should only be given controlling weight, unless arbitrary, capricious, or manifestly contrary to law, when it relates to policy matters peculiar to its administrative competence. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941). Moreover, deference is only appropriate

1. § 40–6–120(3), 17 C.R.S. (1993) states:
The maximum time period of any temporary authority or approval shall not be extended or renewed under the provisions of article 4 of title 24, C.R.S. [the State Administrative Procedure Act], or otherwise.

where, unlike the decision before us, it is consistent with earlier and later pronouncements, it is the result of a body of recognized experience, and it has developed over time. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The Public Utilities Commission decision here, one in which there was significant vacillation and confusion within the agency prior to reaching the ruling under review, does not, therefore, carry the hallmarks of a settled and time-tested decision which by its nature has the power to persuade.

Furthermore, the plain wording of section 40–6–120 provides no basis for the majority's proposition that temporary authority automatically is to be extended past the date of its expiration where a motion for extension has been filed prior to the expiration date. In fact, the majority decision actually impugns the PUC's own Rules of Practice and Procedure in that it is now to a temporary carrier's advantage, assuming its business is profitable, to wait until the last possible moment to file its request for an extension because the later the filing the longer the carrier is insured of continued operation, including, without action by the PUC, a de facto extension of temporary authority beyond express statutory limits.[1]

Under our form of government, the control the electorate exercises over the PUC is through the General Assembly by legislative enactments. If we fail to require the PUC to follow the plain language of the statutes that address its administrative responsibilities and authority, we grant to the PUC a power not confined to its authority and not contemplated by the legislature.

Accordingly, I respectfully dissent.

I am authorized to say that Justice ERICKSON joins in this dissent.

---

1. Public Utility Commission Rule of Practice and Procedure 50(j)(4) provides that motions for extension of temporary authority should be filed at least twenty days prior to expiration of that authority.