**Thomas A. KOURLIS, Commissioner of Agriculture, Colorado Department of Agriculture, Plaintiff–Appellee,**

**v.**

**Mary PORT, individually, and Colorado Animal Refuge, Inc., a Colorado corporation, Defendants–Appellants.**

No. 99CA0937.

Colorado Court of Appeals, Div. II.

June 8, 2000.

Rehearing Denied Sept. 28, 2000.

Certiorari Denied Feb. 20, 2001.*

---

* Justice KOURLIS does not participate.

Ken Salazar, Attorney General, Donna L. Rice, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Paul Grant, Englewood, Colorado, for Defendants–Appellants.

Opinion by Judge PLANK.

Defendant, Mary Port, appeals an order of the trial court holding her in contempt of court and sentencing her to 60 days of in-home confinement. Although plaintiff, Thomas A. Kourlis, the Commissioner of Agriculture for the Colorado Department of Agriculture, initially cross-appealed the dismissal of contempt citations against two others allegedly acting in concert with defendant, the cross-appeal was later dismissed voluntarily. We affirm the trial court's order.

Defendant operated a non-profit animal shelter on her property and was found to be in violation of the Pet Animal Care Facilities Act, §§ 35–80–101 to –117, C.R.S.1999 (PACFA). The district court ordered (1) that she submit to random, unannounced inspections by the state veterinarian not more frequently than once each 60 days, (2) that she cooperate with plaintiff and the state veterinarian and not impede them in the performance of their duties, and (3) that she comply with all the provisions of PACFA, and, in particular, that she not keep more than 24 dogs on her property.

Upon a contempt citation brought by plaintiff, the trial court found defendant in contempt of its injunction and order, reaffirmed its order, and fined defendant. Upon a subsequent contempt citation, the trial court again found defendant in contempt, modified its injunction and order to permit up to 20 inspections per year, vacated the earlier fine as constituting an illegal blending of remedial and punitive contempt sanctions, and sentenced defendant to 60 days of in-home confinement. The trial court stayed the sentence pending this appeal.

## I.

Defendant contends that the trial court erred when it denied her demand for a jury trial on the contempt citation. We disagree.

### A.

Contempt of court involving "conduct that is found to be offensive to the authority and dignity of the court" may be punished by a jail sentence or a fine, or both. C.R.C.P. 107(a)(4). When the maximum sentence does not exceed six months in prison, the alleged contemnor is not entitled to a jury trial. *People v. Barron*, 677 P.2d 1370 (Colo.1984).

Upon advising defendant of her rights prior to the hearing on the contempt citation, the trial court also indicated that she would not be subjected to more than six months in jail. When defendant subsequently filed a demand for a trial by jury, the trial court denied the demand. At the contempt hearing, the trial court found that defendant had willfully violated its orders without justification, and sentenced her to 60 days of in-home confinement.

Because the trial court limited the possible sentence to a maximum of six months in jail if defendant were found to be in contempt, we conclude that the holding in *Barron*, requiring a jury trial only if the possible sentence exceeds six months in prison, is dispositive. *See People v. Kriho*, 996 P.2d 158 (Colo.App.1999).

### B.

■ Defendant nevertheless argues that § 16–10–101, C.R.S.1999, which guarantees the right to a jury trial to any person accused of a criminal offense, applies to a criminal contempt proceeding. We are not persuaded.

Section 16–10–101 states, in pertinent part:

The right of a person who is accused of an offense other than a noncriminal traffic infraction or offense, or other than a municipal charter or ordinance violation . . . to have a trial by jury is inviolate and a matter of substantive due process of law. . . .

■ In *Barron*, the supreme court noted that contempt is neither a statutory nor a common-law crime. Instead, the authority to punish contempt is an exercise of a court's inherent powers to enforce obedience to its orders. *See also Austin v. City & County of Denver*, 156 Colo. 180, 397 P.2d 743 (1964). Accordingly, because punitive contempt (formerly known as "criminal contempt") is not a criminal offense, a plain reading of § 16–10–101 demonstrates that it is not applicable.

### C.

Neither are we persuaded by defendant's argument that the United States Supreme Court, in *Bloom v. State of Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), held that criminal contempt is a criminal offense, subject to all the protections afforded criminal defendants, as a matter of constitutional law. There, the Supreme Court set forth the rule that an alleged contemnor subject to a punishment of more than six months in jail is constitutionally entitled to a jury trial, but that one subject to a jail term six months or less is not. Indeed, our supreme court followed *Bloom* when it decided *Barron*.

However, the Supreme Court did assert in *Bloom* that "[c]riminal contempt is a crime in the ordinary sense." *Bloom v. State of Illinois, supra*, 391 U.S. at 201, 88 S.Ct. at 1481, 20 L.Ed.2d at 528. Nevertheless, the Supreme Court noted elsewhere in its opinion that, because "serious contempts are so nearly like other serious crimes," a jury trial is constitutionally warranted only if the punishment may exceed six months in jail. *Bloom v. State of Illinois, supra*, 391 U.S. at 198, 88 S.Ct. at 1480, 20 L.Ed.2d at 526. The *Bloom* Court also observed that criminal contempt has traditionally been viewed not as a crime but rather as an exercise of a court's inherent powers to enforce its orders, citing among other sources Blackstone's *Commentaries on the Laws of England* (1890). Nowhere in its opinion did the Supreme Court evidence an intention to change that longstanding view.

Instead, the Supreme Court analyzed "serious criminal contempt" as a separate kind of unlawful activity with consequences to the defendant indistinguishable from those of a criminal prosecution, and therefore held that a jury trial is constitutionally required, as in criminal prosecutions, if the punishment may exceed six months in jail. *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573 (Mo. 1994) (punitive contempt is *sui generis*, and the Supreme Court did not hold in *Bloom v. State of Illinois* that it is a criminal offense); *accord People v. Razatos*, 699 P.2d 970 (Colo. 1985) (noting that privilege against self-incrimination is available when one is faced with possible punitive contempt proceeding because such proceedings have consequences generally indistinguishable from criminal

prosecutions); *Robran v. People ex rel. Smith*, 173 Colo. 378, 479 P.2d 976 (1971) (*Bloom v. State of Illinois* changed nothing with regard to punitive contempt when the maximum sentence does not exceed six months in jail). Accordingly, we are not persuaded that the above-quoted language from *Bloom v. State of Illinois*, taken in context with the remainder of the opinion and in conjunction with § 16–10–101, C.R.S. 1999, mandates a jury trial for defendant under the circumstances presented here.

### D.

■ Defendant also argues that, because criminal contempt may be charged either by a contempt citation pursuant to C.R.C.P. 107 or by information or criminal complaint, all the protections afforded a criminal defendant must similarly be provided to an accused contemnor even when the proceeding is commenced pursuant to C.R.C.P. 107. Again, we disagree.

■■ We find *Barron* to be dispositive of this argument, as well. There, the supreme court noted that, while prior cases permitted a criminal contempt to be prosecuted pursuant to a complaint or information, it is the better practice to bring a contempt citation pursuant to C.R.C.P. 107, and the provisions of the rule control the procedure employed regardless of the manner in which the contempt citation is brought.

### E.

Defendant makes additional arguments that she was entitled to a jury trial, each of which is premised upon her assertion that a criminal contempt proceeding is a criminal prosecution. Because we have rejected that assertion, we need not reach those arguments.

### II.

Defendant argues that a recent amendment to PACFA is unconstitutional because it denies her equal protection of the law. We disagree.

■ Statutes are presumed to be constitutional, and the party asserting to the con-trary bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993).

■ A statute comports with the constitutional guarantee of equal protection of the laws if any distinctions it draws among the persons affected are rationally related to a legitimate governmental purpose, and it affords similar treatment to those persons who are similarly situated. *Diamond Shamrock Refining & Marketing Co. v. Department of Labor and Employment,* 976 P.2d 286 (Colo. App.1998).

Section 35–80–102(11), C.R.S.1999, states in pertinent part:

> "Pet animal facility" means any place or premise used in whole or in part, which part is used for the keeping of pet animals for the purpose of adoption, breeding, boarding, grooming, handling, selling, sheltering, trading, or otherwise transferring such animals. "Pet animal facility" also includes any individual animals kept by such a facility as breeding stock, such licensing of individual breeding stock to be inclusive in the pet animal facility license.... *For purposes of this article, two or more animal facilities that have the same or a similar purpose and operate from one place or premises shall be considered a single pet animal facility.*

(emphasis added).

The emphasized portion of the statute was added by amendment in 1998, after the injunction and order entered against defendant but before the contempt proceeding was commenced. *See* Colo. Sess. Laws 1998, ch. 44, § 35–80–102 at 119. Plaintiff, in his motion for a contempt citation, relied upon the amended statute to argue that defendant had violated, and was continuing to violate, the court's injunction and order.

■ Defendant argues that the statutory language of § 35–80–102(11) violates equal protection because it is arbitrary and bears no rational relation to a legitimate governmental purpose, and because it treats in a different way persons who are similarly situated. She points out that the statute would

appear to permit multiple facilities to exist on adjacent but separately owned small parcels, while forbidding multiple facilities on larger leased portions of a single parcel. We are not persuaded.

Defendant owned a 44–acre parcel of land. After being enjoined from keeping more than 24 dogs on her property, she allegedly leased portions of the land to others, who then purported to adopt some of the animals and to keep them on the leased land. Plaintiff asserted in the motion for a contempt citation that defendant was operating more than one facility at the same "place or premises" and that therefore all the facilities together constituted a single pet animal facility under PACFA. The trial court found, however, that defendant used the purported leases and adoptions merely as a subterfuge to avoid compliance with its order. Because that finding is supported by evidence in the record, it is binding on this court. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

We agree with defendant's argument that a legitimate leasehold interest would generally be sufficient to create a separate "place or premises" for purposes of the statute. Accordingly, we perceive no constitutional infirmity in the 1998 amendment, for it treats identically all owners and lessees of real property: each may keep no more than 24 dogs without a PACFA license. Absent some differing treatment of persons similarly situated, defendant's equal protection challenge must fail. *See Diamond Shamrock Refining & Marketing Co. v. Colorado Department of Labor and Employment, supra.*

■ Defendant also argues that the statute irrationally ignores the size of the parcels of land on which the regulated facilities are located. However, we note that PACFA is primarily focused on matters having little or nothing to do with the size of the parcel of land on which animals are kept, such as ensuring adequate "sanitation, ventilation, heating, cooling, humidity, spatial and enclosure requirements, nutrition, humane care, medical treatment, and method of operation," as well as the "[m]aintenance of records concerning health care, euthanasia, and transactions involving pet animals." Section 35–80–109(2), C.R.S.1999. PACFA therefore ex-

pressly exempts from its requirements small facilities for which enforcement and compliance would be burdensome on the owners. *See, e.g.,* § 35–80–102(2), C.R.S.1999 (allowing a facility to house up to 24 dogs without a PACFA license and compliance with its requirements). We do not perceive this distinction between small and large facilities, irrespective of the size of the parcel of land on which they are situated, to be irrational or unrelated to any legitimate governmental purpose.

Accordingly, we conclude that defendant has not proved the statute to be unconstitutional beyond a reasonable doubt, and we perceive in its language and application no violation of the constitutional guarantee of equal protection of the laws.

### III.

Defendant also contends that the 1998 PACFA amendment is a bill of attainder, an *ex post facto* law, or an unconstitutional impairment of the right to contract. We disagree with all these contentions.

■ A bill of attainder is a legislative enactment that imposes criminal punishment without the benefit of a trial on a named individual or a readily identifiable group of individuals. *Velarde v. Zavaras,* 960 P.2d 1162 (Colo.1998). The 1998 PACFA amendment does not impose punishment on defendant without a trial, either individually or as a member of a distinct and identifiable class, and for that reason alone it is not a bill of attainder.

■ An *ex post facto* law is one which proscribes and subjects to punishment conduct committed prior to its enactment, or which increases the punishment for conduct already proscribed but committed prior to its enactment. *Jamison v. People,* 988 P.2d 177 (Colo.App.1999).

Defendant argues that the 1998 PACFA amendment operates to proscribe certain conduct performed on leased land, or to proscribe the lease of land for such purposes, and notes that the leases at issue here were entered into prior to the enactment of the amendment. However, as previously discussed, the trial court did not apply the amended statutory language to hold defendant in contempt but rather found that her

conduct was a willful violation of its prior order, with the leases being no more than attempted subterfuge to avoid enforcement of that order. Accordingly, we do not perceive the 1998 PACFA amendment to be an *ex post facto* law on its face or as applied to defendant.

Similarly, a statute impairs the right to contract only if it retrospectively operates to invalidate a vested right pursuant to a contract lawfully entered into prior to the statute's enactment. *Gambler's Express Inc. v. Public Utilities Commission,* 868 P.2d 405 (Colo.1994). Defendant argues that the 1998 PACFA amendment impairs her constitutional right to contract by, in effect, invalidating the leases at issue here which were entered into prior to its enactment. We conclude, however, that defendant has failed to establish that § 35–80–102(11) invalidates the leases at issue or any others. Instead, we note again that the trial court found, with support in the record, that the leases were nothing more than a subterfuge to avoid compliance with its order.

The order is affirmed.

Judge TAUBMAN and Judge NIETO concur.